ELIJAH GOVE *et al.*, Appellants, *v.* SARAH CATHER, Appellee.

APPEAL FROM ADAMS.

The enforcement of a mechanics' lien, does not cut off dower.

A sale under a mechanics' lien, which attached before the execution of a deed of trust, would revive dower, that deed being defeated, although the wife had joined in the deed of trust.

A certificate of acknowledgment must show that the wife was known to the officer to be the person who signed the deed.

THIS was a suit in chancery, brought by the said Sarah Cather, as widow of Zenas Cather, deceased, against the said Gove and others, in the Adams Circuit Court, to recover dower in certain real estate in the city of Quincy, called the Cather House, and damages for the detention of such dower, from the thirtieth day of September, A. D. 1858, the time of demand made.

The bill is in the usual form for such purposes, showing that Gove acquired title to the premises by means of a sheriff's deed of the same, executed by the sheriff of Adams county, to said Gove, dated August 17, 1858, and founded on a purchase of the same for $11,151.96, at a judicial sale made by the said sheriff on the twenty-third day of May, A. D. 1857, under, and in pursuance of two special executions, duly issued to him, by the clerk of said court, on two decrees of said court, against

the said Zenas Cather, in his lifetime, and rendered at the March term of said court, A. D. 1857, and each was to enforce liens for the balance due for work and labor done and materials furnished for building the said Cather House; the liens being founded on contracts made by the said Zenas, in January, A. D. 1856, and subsequent performance of the same by the mechanics.

The contracts, and all the proceedings to enforce the liens, are set forth at length in the bill.

The bill sets up, that the said Gove holds a certain deed of trust, purporting to be executed by the said Zenas Cather, and the said Sarah Cather, his wife, to Abel Fox, to secure the payment of $3,548.50, in eighteen months from the date of said deed, (and which was dated June 11, 1856,) with interest at the rate of ten per cent., payable semi-annually, $900 of the same being a note to Mary Ann Walker, and the balance a note to Fox himself; and that both of said notes were assigned to said Gove, after the said sheriff's sale; and that the said deed of trust is void, as to the said Sarah, as having never been executed by her.

The bill was taken for confessed against all defendants except Gove, who, on the twenty-fourth of December, A. D. 1858, filed his sworn answer, admitting the marriage, seizin of the premises during coverture, death of the husband, Zenas Cather, and demand of dower.

The answer then sets up, for the purpose of diminishing the amount of dower, the aforesaid deed of trust to Fox, an assignment of the same by him to Gove, and an agreement in said assignment that Fox should sell the premises in pursuance of the provisions in the deed of trust, when requested by Gove.

The answer also sets up the contracts with the mechanics, and their performance of the same, the legal proceedings to enforce the liens founded thereon, the sale by the sheriff, as aforesaid, to Gove, for $11,151.96, and the deed for the premises executed by the sheriff to Gove, as aforesaid; and avers that the aforesaid improvements put on the premises by the mechanics, and for which they never received pay except by said sale, are worth the sum aforesaid paid, by said Gove, at said sheriff's sale; and insists that Gove stands in the same position to the dowress, as if he had taken a deed from the said Zenas, at the time the contracts were made with the mechanics, and had made the improvements on said premises himself, afterwards.

The answer also sets up, that since Gove came into possession of said premises, he had put thereon large and expensive improvements, which were necessary and proper, for the proper enjoyment thereof.

A replication to Gove's answer was filed in the usual form.

The cause was referred to a master, to take evidence.

The defendant, Gove, put in evidence, an admission of the complainant, in writing, in substance, that since he took possession of the premises, he had put necessary improvements thereon of the value of $4,000.

Also, a duly certified copy of the proceedings to enforce the mechanics' liens, showing the aforesaid purchase of Gove for $11,151.96.

Also, the sheriff's deed for the premises to Gove.

Also, notes from Cather to Fox and to Walker, and the deed of trust to secure the same, and the acknowledgment thereof, in substance, in the usual form, and the assignment of the said notes to Gove, by the respective payees thereof, and the assignment of the said deed of trust, by Fox to Gove, and the agreement therein contained, for Fox to sell said premises in pursuance of said deed, when requested by Gove, on which deed there was due, Nov. 15, 1850, $4,944.66, all correspondent with Gove's answer.

Also, tax receipts for the payment of taxes, by Gove, on the premises, for the years 1857 and 1858, amounting to $580.65, and for the city tax of 1859, amounting to $264.47.

The cause was tried on bill, answer, exhibits and master's report, by SIBLEY, Judge, by whom a decree was rendered, in substance, for the yearly payment of $225 to the widow, as dower, and $525 as damages for the detention of the said dower by the said Gove, to be paid to the master of said court; and Gove thereupon prayed an appeal.

Gove assigns for error, among other things:

The decree that he should pay $225 annually, on account of the said Sarah Cather's right of dower in the premises, in the bill described.

The decree that he should pay $525 as damages for withholding of the said Sarah Cather's dower in said premises.

The decree that said Gove should pay any of said sums to the master of the court below.

WHEAT & GROVER, for Appellant.

O. C. SKINNER, for Appellees.

BREESE, J. The only question in this case is, to how much is the complainant, who sues as the widow of Zenas Cather, deceased, entitled, out of the estate of her deceased husband, in lieu of dower, the property not being susceptible of division.

Connected with this question are several others: 1, Whether the lien of the mechanics overrides the widow's dower; 2,

Whether the deed of trust to Fox, and by him assigned to the appellant, was a subsisting incumbrance on the property, including the dower estate; 3, To what extent appellant should be allowed for improvements made since his title accrued; and 4, What is the yearly value of the property, and on what basis should the dower be estimated.

Following the line of argument pursued by counsel, we will briefly notice these questions in the order presented.

The appellants contend that the lien of the mechanics and material men is paramount to the widow's dower, so far at least as regards the improvements out of which the liens arose, and as they exceed in amount, in this case, the value of the original improvements, the appellee is not entitled to any dower in them; and that appellant, Gove, is entitled to all the rights of the mechanics and material men, under whose proceedings to enforce their liens he purchased and holds the premises, and that the improvements he has put on the premises himself, since they came into his possession, are not subject to the dower of the appellee; and that appellant, Gove, holds, as paramount to the appellee's right of dower, the deed of trust on the premises, executed by her and her husband to Abel Fox, and purchased in by Gove, and that such deed was duly executed and acknowledged by her and her husband. They also contend, that neither the law nor evidence authorized the appellee's damages to be assessed at any higher rate than her yearly allowance, and that the law does not authorize the money in lieu of dower, on the damages assessed, to be paid to the *master of the court*, even if there was such an officer, but requires the same to be paid to the dowress, citing the statute, title Dower, (Scates' Comp. 151.)

We are referred, in support of these several propositions, to several cases, which we have examined.

The first case referred to, *Warner* v. *VanAlstyne and others*, 3 Paige Ch. 513, merely decides, where a vendor takes no mortgage or other collateral security for the balance of the purchase money of land sold, he is entitled to an equitable lien upon the land in the hands of the heirs of the vendee, for the payment of such balance, and as the widow comes in for dower in the estate of her husband, by operation of law, and not as a purchaser for a valuable consideration, she takes it subject to this equitable lien of the vendor, which attached upon the estate simultaneously with the seizin of the husband. But, the court say, the unpaid purchase money was a personal debt of the husband, and for which he gave his personal obligation, and the personal estate of the husband would be the primary fund for the payment of this debt, and therefore that should be first

exhausted before a resort is had to the dower right in the land for the recovery of the unpaid purchase money.

The same doctrine was recognized in the case of *Nazareth Benevolent Institution* v. *Lowe*, 1 B. Monroe, 257, the title and the vendor's lien, being connate, there never was any right in the husband or his wife unincumbered by the lien, and her right to dower is to be postponed to the lien for the purchase money.

The case of *Summers* v. *Babb*, 13 Ill. 483, decides only, so far as this case is concerned, that a widow can only take her dower according to the valuation of the land at the time it was alienated by judicial sale or otherwise, and that she is not dowable of improvements put upon the land by the purchaser, but is entitled to the benefit of its increased value arising from causes other than the labor and expenditure of the alienee.

The case of *Gaty* v. *Casey et al.*, 15 ib. 192, decides simply, that it is not the contract which creates the lien under the statute, but it is the use of the materials furnished upon the premises, the putting them into the building, and attaching them to the freehold, which entitles the party furnishing the materials to a lien upon the premises to the extent of their value. The lien attached to every article furnished as material. As a rich oriental perfume pervades every vacant space of the loftiest chamber, so does this subtle essence insinuate itself into every fibre of the material. The case further decides, that no previous incumbrance created upon the land, could operate upon the materials furnished, and this by the express terms of the twentieth section of the mechanics' lien law.

The case of *Williams* v. *Chapman*, 17 Ill. R. 424, was a case of priority of lien, but between a mechanic and a mortgagee, and the court held, that if the mortgagee or those claiming under him had not been made a party to the proceedings to enforce the mechanics' lien and were ignorant of it, the title to the land derived through the mortgage will be superior, and as in the case of *Gaty* v. *Casey*, that the mechanics' lien attaches, not from the date of the contract, but from the delivery of the materials upon the premises, and connecting them with the freehold.

The same doctrine is reiterated in the case of *Hunter* v. *Blanchard*, 18 Ill. R. 318, and the court say, the legislature only intended to give this lien for the materials actually used in, or the labor really bestowed upon the building situated upon the premises against which the lien is sought to be established. The object of the law was, to allow the party to pursue the thing actually furnished. The statute continues, in the party furnishing the materials of which the building is erected, a *quasi* property in those materials, and others with which they have

been commingled in the building, and allows him to follow them, thus transformed, for the purpose of getting his pay—the essence of the lien being, the furnishing the materials and labor out of which the building is constructed.

These are all the cases to which reference is made by the appellant's counsel. Sections one, ten, twenty and twenty-one of the lien law, are also referred to. The first section gives a lien on the whole tract of land, or town lot, for the whole amount of the labor or materials furnished. The tenth section authorizes all persons interested to become parties to the suit to enforce the lien. The twentieth provides, " that no incumbrance upon land, created before or after the making of a contract, under the provisions of this chapter, shall operate upon the building erected or materials furnished, until the lien in favor of the person doing the work or furnishing the materials, shall have been satisfied ; and upon questions arising between previous incumbrancers and creditors, under the provisions of this chapter, the previous incumbrance shall be preferred to the extent of the value of the land at the time of making the contract, and the court shall ascertain, by jury or otherwise, as the case may require, what proportion of the proceeds of any sale shall be paid to the several parties in interest."

The twenty-first section defines " parties in interest " to be all persons who may have any legal or equitable claim to land or lots upon which a lien may be attempted to be enforced under this chapter. Scates' Comp. 157, 158, 159.

We do not see anything in the statute, or in the cases cited, sustaining the view the appellant, Gove, has presented of his rights in this controversy, to any greater extent than this, that the widow is not dowable of improvements made upon the land since the alienation. But it must be observed, that the alienation in this case was brought about by the claim for the improvements by the mechanics and the material men, by judicial sale under a decree for their value. The great bulk of the improvements were made before this sale. They were the property of her husband—were on his land, in which she had a right of dower, and by no act, contract, or other transaction of his, could that right be taken from her. In such improvements as Gove himself has put on the lot, since his purchase, she is not dowable.

We think, both on principle and under the provisions of our statute respecting dower, a widow cannot be divested of the right, nor can it be destroyed in any way, save by the act of the *feme covert*, and that act done according to the forms and requirements of positive law. The appellee had nothing to do with the transactions out of which the liens arose. They were

the act of her husband alone. The labor and materials were added to, and became part of the land, (*Steigleman* v. *McBride*, 17 Ill. R. 301,) and the mechanics were bound to know dower would attach, and, on the death of the husband, vest in the widow. This was a risk they chose to run. They could protect themselves by proper security against this hazard, but the wife must be passive.

It would seem that this court has settled this question, in the case of *Shaeffer et al.* v. *Weed et al.*, 3 Gilman, 513. This was a proceeding under the mechanics' lien law, to which the widow was a party. The court held, unanimously, though the point was not the point in the case on which the writ of error was prosecuted, that the widow's dower cannot be affected by this lien. She cannot be divested of her dower in that way. She is entitled to her dower in all the real estate of which her husband was seized during coverture, unless she has released her dower in the form prescribed by law, except when a lien is created for the purchase money, at the time the husband became seized.

In *Pifer* v. *Ward et al.*, 8 Blackford, 252, the same doctrine was held. The court there say, her right of dower was paramount to the lien ; and the same court, in *Bishop* v. *Boyle*, 9 Ind. 169, say, the widow's right of dower extends to and includes a house erected on land of her husband ; and her claim is superior to a mechanics' lien, for which the property was sold under a decree against the husband to enforce the lien. The statutes of dower and lien in Indiana, are quite similar to our own. That case was on a bill filed by the widow for her dower. The same principle is recognized in *Van Vrouker* v. *Eastman*, 7 Metcalf, 162, where a mechanics' lien being set up against the widow's claim of dower, the court say, the pre-existing lien and the consequent building and improvement of the premises, were created and made by the plaintiff's husband, and she, clearly, is not bound by the lien, and is entitled to her dower in the premises, including the buildings and improvements made thereon by her husband. In this case, the appellee was not a party to the decree to enforce the lien, and cannot, on well-known principles, be affected by it. She could not, with any propriety, be made a party, for the decree of the court could not set off her dower if she was a party.

We come now to the consideration of the deed of trust executed to Fox, and by him sold to the appellant. This deed bears date June 11th, 1856. The contracts with the mechanics, out of which the lien arose, were made in January preceding. The work was commenced by the carpenters, in February, who never ceased their work until the house was occupied, as one of them, Crocket, states in his testimony. The stone and brick

work was commenced in March, and progressed without any delay. By the 10th of June, one story was up, and most of the materials on the ground or in the walls, as Lightfoot testifies. The lien of the mechanics was complete on the 10th of June, and under it the premises were sold to appellant, by judicial decree, and, of necessity, the title of Fox, under his deed, was defeated, and any dower right which she may be supposed to have parted with by joining in its execution, was restored to her, on the principle of the case of *Blain* v. *Harrison*, 11 Ill. R. 384, and *Summers* v. *Babb*, 13 ib. 483, cited by appellant's counsel, by operation of law. But if this were not so, we think appellee had not released her dower by the execution of this deed to Fox. The certificate of her acknowledgment is too defective for such a purpose. We cannot intend anything in favor of it, or supply words that are wanting, or change personal pronouns from male to female. The manifest defects in it cannot be supplied by the court, and have not been explained by counsel. Nor does the certificate of acknowledgment, defective in other respects as it is, state that the wife was known to the officer to be the person who signed the deed. The statutory form must be, substantially, complied with, and must control. As to these requirements of the statute, with which all are familiar, see Scates' Comp. 151,152,961. It cannot be said then, with any plausibility, that holding this deed of trust, by the appellant, he thereby acquired a right paramount to the right of dower. Much has been said on the argument by the appellee, of the supposed merger of the right acquired by the appellant, under the trust deed, into the title acquired by him under the proceedings to enforce the lien, but, believing the dower right was not relinquished by this imperfect and void certificate of acknowledgment, we do not deem it important to go into that branch of the question.

The remaining questions, as to the damages awarded, and the yearly allowance, it may be conceded, that the damages do not bear a just proportion to the yearly allowance, and we cannot well understand on what basis the court placed them. There was a delay of about fourteen months after demand made, before the proceedings in dower were consummated by a decree. The court finds the yearly value of the dower, in the premises, to be two hundred and twenty-five dollars. For the fourteen months delay then, on this basis, the damages—there being no special damages shown or claimed—would not exceed two hundred and sixty-two dollars. The court assessed them at five hundred and twenty-five dollars.

We judge, from the language of the decree, that the court ascertained, in the first place, upon what sum the yearly income

of the property would pay ten per centum, found that sum to be twenty thousand dollars, and so stated it in the decree, thereby fixing a basis for dower.

From this sum ($20,000) the court probably deducted the amount of the notes secured by the deed of trust, which, with interest up to the hearing, would amount to $4,487.80. Also the improvements put on the premises by appellant, amounting to three thousand three hundred dollars, and insurance and taxes at three per cent., which would amount to six hundred dollars, and repairs estimated at ten per cent. of rent, would be two hundred dollars, making in all, $8,587.80, which, deducted from $20,000, leaves $11,412.20, from which income is to be derived, which, estimated on the basis supposed to have been taken by the court, leaves $1,141 as income ; one-third of this, $380, would be the yearly value of the widow's dower, under the most favorable computation for all parties, that we can make.

If the damages are somewhat too high, the yearly allowance is much too low, and upon the whole decree, appellant has no cause to complain. If, in progress of time, the income from the property becomes materially depreciated, or, as it may be, materially enhanced, equity will afford the requisite relief to either party, on filing a proper bill.

The objection that the court directed the damages assessed, and the money allowed in lieu of dower, to be paid to the master of the court, meaning, undoubtedly, the master in chancery of the court, cannot well be made by the appellant ; it would come with more propriety from the appellee. But there is, really, a propriety in so ordering, as in case of default the master is to make sale of the premises. We do not perceive any errors operating to the injury of the appellant, in the decree as pronounced by the Circuit Court, and therefore we affirm it.

*Decree affirmed.*