LYDIA BUTLER, APPELLEE, V. JOHN FITZGERALD ET AL., APPELLANTS.

FILED JANUARY 2, 1895. No. 6385.

1. **Dower.** The statute of this state, prescribing in what real estate of the husband a wife shall be entitled to dower, is but declaratory of the common law.

2. ———: DURATION. When lawful marriage of a man and woman and the ownership of real estate by the former concur, an inchoate dower right attaches in the nature of a charge or incumbrance upon the real estate of the husband; and when such right has once attached, it remains and continues a charge or incumbrance upon the real estate, unless released by the voluntary act of the wife or be extinguished by operation of law, and is consummate upon the death of the husband.

3. **Judicial Sales.** The rule of *caveat emptor* applies to a purchaser of real estate at a judicial sale thereof on execution; and the conveyance made in pursuance thereof conveys no greater estate than would a quitclaim deed for the real estate executed by the execution debtor.

4. ———: Dower Not Extinguished By. The sale of the real estate of the husband under execution on a judgment against him alone, followed by judicial confirmation and conveyance, does not extinguish the inchoate dower right of the wife in such real estate, and upon the death of the husband the wife is entitled to have her dower assigned out of such real estate.

5. **Dower:** Statutory Construction. Real estate which has been sold under execution on a judgment against the husband alone, such sale followed by judicial confirmation and conveyance, is real estate aliened by the husband, within the meaning of section 7, chapter 23, Compiled Statutes, 1893.

6. ———: ———. The phrase "enhanced in value," found in section 7, chapter 23, Compiled Statutes, 1893, is limited in its meaning to appreciation in the value of real estate by reason of improvements put thereon by the alienee.

7. ———: Assignment: Appraisement. In estimating the value of real estate, aliened by the husband during his marriage, for the purpose of assigning his widow dower therein, the value of the real estate is to be estimated as it is at the time of the assignment of dower, excluding the increase in value of the real estate resulting from improvements made thereon by the alienee subsequent to the date of alienation.

Appeal from the district court of Lancaster county. Heard below before Tibbets, J.

*Marquett, Deweese & Hall* and *Abbott, Selleck & Lane,* for appellants:

The sheriff's sale was an alienation within the meaning of section 7, chapter 23, Compiled Statutes. (*Smith v. Addleman,* 5 Blackf. [Ind.], 407 ; *Powell v. Monson & Brimfield Mfg. Co.,* 3 Mason [U. S.], 374; *Wood v. Morgan,* 56 Ala., 397 ; *Price v. Hobbs,* 47 Md., 359.) And the value at the time of such alienation should be the basis of computing the dower interest. (*Guerin v. Moore,* 25 Minn.,

17

462; *Walker v. Schuyler*, 10 Wend. [N. Y.], 480; *Dorchester v. Coventry*, 11 Johns. [N. Y.], 510; *Humphrey v. Phinney*, 2 Johns. [N. Y.], 484; *Allan v. Smith*, 1 Cow. [N. Y.], 180; *Shaw v. White*, 13 Johns. [N. Y.], 179; *Dolf v. Basset*, 15 Johns. [N. Y.], 21; *Marble v. Lewis*, 53 Barb. [N. Y.], 432.)

As to the definition of dower see *Hurst v. Hotaling*, 20 Neb., 178.

Appellee's estate should also be diminished by the amount of the taxes and interest thereon. (Cons. Stats., sec. 4380; *Dworak v. More*, 25 Neb., 735; *Page v. Davis*, 26 Neb., 670.)

*Stewart & Munger* and *Leese & Starling, contra:*

Appellee was not liable for the taxes paid by Wright. (*Miller v. Pence*, 23 N. E. Rep. [Ill.], 1032; *Felch v. Finch*, 52 Ia., 563; *Vinson v. Gentry*, 21 S. W. Rep. [Ky.], 578; *Shell v. Duncan*, 10 S. E. Rep. [N. Car.], 330.)

The value at the time of assigning dower should be taken. (*Thompson v. Morrow*, 5 Serg. & R. [Pa.], 289; *Johnston v. Vandyke*, 6 McLean [U. S.], 422; *Shirtz v. Shirtz*, 5 Watts [Pa.], 255; *Powell v. Monson & Brimfield Mfg. Co.*, 3 Mason [U. S.], 347; *Mosher v. Mosher*, 15 Me., 371; *Allen v. McCoy*, 8 O., 418; *Smith v. Addleman*, 5 Blackf. [Ind.], 406; *Wall v. Hill*, 7 Dana [Ky.], 172; *Rawlins v. Buttel*, 1 Houst. [Del.], 224; *Wooldridge v. Wilkins*, 3 How. [Miss.], 360; *Dunseth v. Bank of United States*, 6 O., 78; *Green v. Tennant*, 2 Har. [Del.], 336; *Bowie v. Berry*, 1 Md. Ch., 452; *Summers v. Babb*, 13 Ill., 483; *Fritz v. Tudor*, 1 Bush [Ky.], 28; *Boyd v. Carlton*, 69 Me., 200; *Price v. Hobbs*, 47 Md., 359; *Manning v. Laboree*, 33 Me., 343; *Hobbs v. Harvey*, 16 Me., 80; *Thornburn v. Doscher*, 32 Fed. Rep., 812; *Westbrook v. Vanderburgh*, 36 Mich., 30.)

The title acquired in the land by the purchaser at a sale under execution is that only of the person against whom

the execution is issued. (Secs. 490 and 500, Code; *Mansfield v. Gregory*, 8 Neb., 432; *Westheimer v. Reed*, 15 Neb., 662; *Dayton v. Corser*, 53 N. W. Rep. [Minn.], 717.)

And an execution against the husband alone will not bar the widow's dower. (*Dayton v. Corser*, 53 N. W. Rep. [Minn.], 717; *Dingman v. Dingman*, 39 O. St., 172; *Parmenter v. Binkley*, 28 O. St., 32; *Mandel v. McClave*, 46 O. St., 407; *Gould v. Luckett*, 47 Miss., 116; *Cowan v. Lindsay*, 30 Wis., 587; *Combs v. Young*, 26 Am. Dec. [Tenn.], 225; *Rutherford v. Read*, 6 Humph. [Tenn.], 423; 1 Scribner, Dower, p. 472; Freeman, Judgments [2d ed.], sec. 361*a*; *Gove v. Cather*, 23 Ill., 634; *Hamilton v. Southern Nevada Gold & Silver Mining Co.*, 33 Fed. Rep., 562; *Grissom v. Moore*, 100 Ind., 296; 5 Am. & Eng. Ency. of Law, par. 11, p. 921; *Vinson v. Gentry*, 21 S. W. Rep. [Ky.], 578; *Snyder v. Snyder*, 6 Mich., 469.)

RAGAN, C.

It appears from a stipulation of the parties to this suit in the record that the material facts in this case are that Lydia Butler and David Butler were husband and wife, and resided as such in this state from the year 1866 until David Butler's death, in May, 1891, and that Lydia Butler still resides in this state; that on the 6th of October, 1879, David Butler was the owner in fee-simple of certain real estate, which on said day was levied upon by an execution issued on a judgment obtained against David Butler alone and sold to satisfy such judgment; that John Fitzgerald became the purchaser of said real estate at said execution sale, and said sale was followed by a judicial confirmation and conveyance to him of said real estate. Lydia Butler brought this suit to the district court of Lancaster county against John Fitzgerald and others to recover her dower in said real estate which had been sold and conveyed under execution as aforesaid. She had judgment, and John Fitzgerald and others interested in said real estate have appealed.

The stipulation of facts referred to, and on which the case was tried in the court below, provides that if the court shall find that Lydia Butler was entitled to dower in said real estate, the court shall ascertain the value of such dower interest and render judgment therefor in her favor; that said Lydia Butler agrees to accept a gross sum of money in lieu of said dower. The two important questions presented by this appeal are:

1. Does the sale of the real estate of a husband under execution on a judgment against him alone, followed by judicial confirmation and conveyance, extinguish the dower interest of the widow of said husband in said real estate? Blackstone defines "dower" at common law thus: "Tenant in dower is where the husband of a woman is seized of an estate of inheritance and dies; in this case the wife shall have a third part of all the lands and tenements whereof. he was seized at any time during the coverture, to hold to herself for the term of her natural life;" and he further says that the object of the common law in giving a widow dower in the estate of her husband was to provide "for the sustenance of the widow and for the nurture and education of the younger children." (1 Cooley's Blackstone, book 2, pp. 128, 129.) Section 1, chapter 23, Compiled Statutes, 1893, provides: "The widow of every deceased person shall be entitled to dower, or the use, during her natural life, of one-third part of all the lands whereof her husband was seized, of all [an] estate of inheritance at any time during the marriage, unless she is lawfully barred thereof." It will be seen that our statute in the matter of a widow's dower follows the rule of the common law, or, more properly speaking, the statute is but declaratory of the common law. In 2 Scribner, Dower, page 2, section 2, it is said: "It will be observed that this estate [dower] arises solely by operation of law and not by force of any contract, expressed or implied, between the parties; it is the silent effect of the relation entered into by them, not as in itself inci_

dental to that relation or as implied by the marriage contract, but merely as that contract calls into operation the positive institutions of the municipal law." And it was expressly held in *Shearer v. Ranger*, 39 Mass., 447, that "an inchoate right of dower is an existing incumbrance on land within the meaning of the covenant against incumbrances." However this may be, it is clear that when a lawful marriage of a man and woman and the ownership of real estate by the former concur, an inchoate dower right attaches in the nature of a charge or incumbrance upon the real estate of the husband. Under certain conditions, unnecessary to notice here, the dower right may never attach, but when it has once attached, it remains and continues a charge or incumbrance upon the real estate, unless released by the voluntary act of the wife or extinguished by operation of law; and is consummate upon the death of the husband, and in certain other contingencies, not involved in this case, provided for by section 23 of chapter 25 of the statutes, entitled "Divorce and Alimony." In this case none of the conditions existed which prevented the inchoate dower right of Lydia Butler from attaching to the real estate of her husband owned by him at the time of his marriage to her or acquired by him thereafter. The husband is dead, and we now proceed to inquire whether his widow, within the meaning of section 1, chapter 23, quoted above, has been or is "lawfully barred" of a dower interest in the real estate in controversy. The rule of the common law as to the effect of a husband's acts during the coverture on the dower interest of his wife in his real estate is thus stated in 1 Scribner, Dower, page 603, section 1: "After the right of dower has once attached it is not in the power of the husband alone to defeat it by any act in the nature of an alienation or charge. It is a right attaching in law, which, although it may possibly never become absolute, (as if the wife died in the lifetime of the husband,) yet, from the moment that the facts of marriage and seizin concur, it is so fixed on the land as

to become a title paramount to that of any person claiming under the husband by subsequent act.   The alienation of the husband, therefore, whether voluntary, as by deed or will, or involuntary, as by bankruptcy or otherwise, will confer no title on the alienee as against the wife in respect of her dower, but she will be entitled to recover against such alienee, (except as to damages,) in the same manner as she would have recovered against the heir of the husband had the latter died seized."   In the case at bar the real estate in controversy was not aliened by the husband, as that phrase is ordinarily understood.   He was deprived of the title to this real estate involuntarily; and we may presume that the only act of his which led to his be-ing deprived of this real estate by the law was his vol-untarily contracting the debt made the basis of the judg-ment, under which the real estate was sold.   The decisions of the courts of last resort of the states in construing stat-utes like our own, and the decisions of the courts of last resort of the states whose statutes do not define power, but follow the common law rule, sustain the proposition quoted above from Scribner, as to the inability of a husband by any voluntary act of his to bar his wife's right of dower to his real estate, after such right has once attached, either directly or indirectly.   In *Pifer v. Ward*, 8 Blackf. [Ind.], 251, it was held that " if a mechanic's lien accrue after the employer's marriage, and the employer die after the accru-ing of the lien, the right of dower of the employer's widow will be paramount to the lien ; " and in *Bishop v. Boyle*, 9 Ind., 169, it was held that "the widow's right of dower extends to and includes a house erected on lands of her husband, and her claim is superior to a mechanic's lien for which the property was sold under a decree against the husband to enforce the lien."   The court said : "The wife's dower is a favorite of the law, not resting in contract or resulting from the marriage relation.   Hers is the elder lien.   The mechanic bestows his labor with a knowledge

of her prior right to the real estate, and he knows that the
house he is building, as brick is added to brick and nail
after nail is driven, becomes real estate. He can protect
himself by security or not venture. She is passive and can
do nothing. It is for this reason that she is declared to be
a favorite of the law." (See, also, *Mark v. Murphy*, 76
Ind., 534.) In *Shaeffer v. Weed*, 3 Gil. [Ill.], 511, it was
held that "a widow's dower cannot be affected by the lien
created by the statute for the benefit of mechanics, etc., but
she is entitled to dower in all the real estate of which her
husband was seized during coverture, unless she has re-
leased it in the form prescribed by law." In *Gove v.
Cather*, 23 Ill., 634, it was held that the enforcement of a
mechanic's lien for improvements made by the husband in
his lifetime will not cut off his wife's right of dower even
to the extent of the value of such improvements. (See,
also, *Dingman v. Dingman*, 39 O. St., 172.) In *Grady v.
McCorkle*, 57 Mo., 172, William Grady owned certain
lands and agreed with his son Leonard that if the latter
would go on the lands and improve them he would convey
the same to him by way of advancement and charge him
with their value. Leonard took possession of the lands
and made improvements on them and occupied the lands
until his death. William Grady died not having conveyed
the lands to Leonard. The widow and heirs of Leonard
Grady brought a suit against the widow and heirs of Will-
iam Grady for specific performance of William Grady's
contract, and the court decreed a specific performance of
the contract. The widow of William Grady was a party
to this suit and served with process but made no appearance.
After this the widow of William Grady brought suit for
her dower interest in the lands, and the court held : "The
alienation of real estate by the husband, whether voluntary,
as by deed or will, or involuntary, as by proceedings against
him, or otherwise, will confer no title on the alienee as
against the wife in respect to her dower;" and that the suit

for specific performance of the contract made by the widow's husband and the decree enforcing such contract did not bar the widow's dower rights, as they were not drawn in question in the specific performance suit; that the decree in that case had the same effect and no more than a deed would have had executed by William Grady alone at the time the decree was rendered had he then been living. Section 64, chapter 46, General Statutes of 1878, of the state of Minnesota, provides that a surviving husband or wife shall be entitled to and shall hold in fee-simple an undivided one-third of all lands of which the deceased was at any time during the marriage seized or possessed. A wife owned certain real estate. A judgment was obtained against the wife and her lands levied upon and sold to satisfy the judgment. The wife then died, and the husband brought suit against the purchasers of the real estate at the execution sale to recover his rights in said real estate. And in *Dayton v. Corser*, 53 N. W. Rep., 717, the supreme court of Minnesota held that "the inchoate contingent interest of a husband or wife in real estate owned by the other fixed (by the statute just quoted), and commonly called the 'dower right,' is not divested by a transfer of title from the owner of the property to a purchaser at an execution sale founded upon a judgment against such owner." The court said: "It hardly seems necessary to cite authorities to the proposition that at common law a wife could not be deprived of her dower rights in the real estate of her husband through a sale upon execution under a judgment obtained against him subsequently to the marriage." (See, also, *Barker v. Parker*, 17 Mass., 563.) It is to be remembered that the language of our statute is that the widow shall have dower in all the real estate of which her husband was seized during the marriage, "unless she is lawfully barred thereof." Keeping in view the nature of a dower interest as defined by the common law and the reason and spirit of the common law on the subject and the authorities just

cited, we would feel safe in saying that the dower rights of the appellee in this case were not extinguished or barred by the sale on execution of her husband's real estate during his life on a judgment rendered against him. But our statute has not remitted the courts for guidance entirely to the common law and common law decisions in respect of dower for determining in what manner a wife or widow may be lawfully barred of her dower rights. Sections 12, 13, and 15 of chapter 23, Compiled Statutes, 1893, provide in what manner a married woman may bar her dower rights in the real estate of her husband. Substantially these provisions provide that a married woman shall be deemed to have released or waived her rights to dower in her husband's real estate only by her voluntary act or contract; and section 43 of chapter 73, Compiled Statutes, 1893, provides that a married woman, "to convey her right of dower, she must execute a deed with or without her husband;" and section 7 of said chapter 23 provides that "when a widow shall be entitled to dower out of any lands which shall have been aliened by the husband in his lifetime, * * * such lands shall be estimated in setting out the widow's dower according to their value at the time when they were so aliened." This statute is of itself a legislative recognition of the inability of a husband to deprive his wife of her dower rights in his real estate by a direct or indirect alienation thereof. And section 477 of the Code of Civil Procedure provides that judgments shall be a lien upon the lands of a debtor; and section 491a of the Code provides that when an execution shall be levied upon real estate the sheriff shall cause the interest of the execution debtor in such real estate to be appraised at its real value; and by sections 499 and 500 of the Code it is provided, in substance, that the sale of a debtor's real estate on execution, and the conveyance of such real estate to the purchaser thereof at such sale, shall vest in such purchaser the interest which the execution

debtor had in said real estate at the time the judgment under which it was sold became a lien thereon.  In the case at bar David Butler had the title to the real estate in controversy at and before the time it was sold on execution, but that title was incumbered or burdened with the inchoate dower interest of his wife, the appellee, and when the judgment was rendered against David Butler it became a lien upon the interest of David Butler in said real estate, but that lien was subject to the inchoate dower interest of the wife therein.  When this real estate was sold and the sale confirmed and the sheriff executed a deed in pursuance thereof, he conveyed to Fitzgerald all the interest that David Butler had in this real estate, and such purchaser took the title to this real estate charged with the same burdens and incumbrances thereon that it was charged while the title rested in David Butler, the wife's inchoate dower right.  The rule of *caveat emptor* applies to a purchaser of real estate at a judicial sale thereof on execution, and the conveyance made to such a purchaser by the sheriff has no greater effect and conveys no greater estate than would a quitclaim deed for the premises executed by the execution debtor. (*Norton v. Nebraska Loan & Trust Co.*, 35 Neb., 466; *Hamilton v. Southern Nevada Gold & Silver Mining Co.*, 33 Fed Rep., 562.)  What the law does not permit a husband to do directly he may not do by indirection; and as we have seen it was not in the power of David Butler, by voluntarily alienating his real estate during his marriage, to deprive his wife of her dower rights therein, it logically follows that the sale of David Butler's real estate on execution on a judgment rendered against him alone did not bar or extinguish the dower right of his wife or widow therein; and it is immaterial whether the debt on which such judgment was rendered was contracted voluntarily or otherwise by the husband.  We accordingly hold and decide that the sale of the real estate of a husband under execution on a judgment against him alone, followed

by judicial confirmation and conveyance, does not ex-
tinguish the inchoate dower of the wife in such real estate;
and that upon the death of the husband the widow is en-
titled to have her dower assigned out of such real estate.

2. The second question is, in estimating the value of the
real estate in controversy for the purpose of assigning the
widow her dower therein, whether its value at the date of
the judicial conveyance made thereof in pursuance of its
sale on execution, or its value at the date of the husband's
death, shall be adopted.    At common law the rule was if a
husband died seized of real estate, in estimating its value
for assigning his widow dower therein its value at the date
of the assignment of dower was adopted.  (2 Scribner,
Dower, sec. 30, p. 595.)    The present English rule is that,
where the title to real estate is in an alienee of the husband,
in estimating the value of such real estate for the purpose
of assigning the husband's widow dower therein, the value
of the real estate at the time of the husband's death is
taken; and if improvements have taken place between the
time of the husband's death and the time of the assign-
ment of dower, then the value must be taken at the date of
the assignment.    The common law rule for estimating the
value of real estate out of which dower is to be assigned to
a widow, the title to which real estate is at the time in an
alienee or a grantee of an alienee of the husband, is stated
in some old English cases found in 2 Scribner, Dower, 605,
as follows: "If a man be seized of land in fee, and take a
wife, and enfeoff a stranger of the land, and the feoffee
builds thereupon a castle or mansion-house, or other build-
ings, or otherwise improves it, so that it is worth more by
the year than when it was in the possession of the husband,
the wife shall not have her dower, but according to the
value it was of in the time of her husband."    "E., who
was the wife of R., demands one-third part of three acres
of land with the appurtenances in E., as her dower, against
W., and W. comes and says that he bought the land of her

husband, naked and unbuilt upon, and he built upon it; and he willingly allows to her her third part, saving the buildings to himself. And therefore she had her seizin, saving to the said W. the houses built by him, etc., because he had, without the buildings, where she might have her land, etc." In *Humphrey v. Phinney*, 2 Johns. [N. Y.], 484, Chief Justice Kent, who delivered the opinion in that case, cited the old English cases just quoted and declared that "such was the law as understood and declared in the most ancient decisions of which we have any record." The American rule follows the rule of the common law. (2 Scribner, Dower, 612. See the rule stated and the authorities collated in support thereof in 5 Am. & Eng. Ency. of Law, p. 929, note 2.) Section 7, chapter 23, Compiled Statutes, 1893, provides: "When a widow shall be entitled to dower out of any lands which shall have been aliened by the husband in his lifetime, and such lands shall have been enhanced in value after the alienation, such lands shall be estimated, in setting out the widow's dower, according to their value at the time when they were so aliened." This statute is declaratory of and follows the common law rule. But the real estate in this controversy was sold under execution on a judgment rendered against the husband alone. Was the judicial sale of this real estate and the confirmation and conveyance made in pursuance thereof an "alienation" of such real estate by the husband within the meaning of this statute? It would seem that the alienation mentioned in the statute meant some voluntary act of the husband. The word "alienate" means: "To transfer property to another; to make a thing another man's. In common law to alienate realty is voluntarily to part with ownership in it, by bargain and sale, conveyance, gift, or will." "Alienation" means: "An act whereby one man transfers the property and possession of lands, tenements, or other things to another." (Anderson's Law Dictionary.) But in *Ayer v. Spring*, 9 Mass., 7, it was held that "where

Butler v. Fitzgerald.

land was taken by execution from a husband, the wife was held to be dowable in the land, as it existed at the time of the extent of the execution, and not in the erections or improvements afterwards made;" and in *McClanahan v. Porter*, 10 Mo., 746, it was held that "a purchaser of lands under execution against the husband occupies the same position as the alienee of the husband." To the same effect see *Price v. Hobbs*, 47 Md., 359; *Wood v. Morgan*, 56 Ala., 397. These authorities are quoted with approval, or rather without dissent, in 2 Scribner, Dower, p. 612. We feel constrained therefore to hold that real estate which has been sold under execution on a judgment against the husband alone, such sale confirmed and a conveyance made in pursuance thereof, is real estate aliened by the husband within the meaning of said section 7, chapter 23.

It appears from the stipulation of facts in this case that the real estate in controversy at the date of the judicial conveyance made thereof in pursuance of its sale on execution was of a certain value, and that the value of the real estate at the date of David Butler's death, exclusive of improvements thereon, was of a different value. The contention of the appellant is that in estimating the value of this real estate for the purpose of assigning Mrs. Butler dower therein its value at the date of the judicial conveyance thereof made in pursuance of its sale on execution should be taken, while the appellee contends that the real estate as it existed at the date of David Butler's death, excluding improvements made thereon since the date of the sheriff's deed, should be the one adopted. The statute, said section 7, chapter 23, provides that in estimating the value of the real estate for the purpose of the widow's dower therein its value at the time it was aliened shall be taken when such real estate shall have been enhanced in value after the alienation. We are thus brought to the consideration of the question, what is the meaning of "enhanced in value" in the statute? Does it mean an appreciation

and increase in value from any and all causes, or is it lim-
ited in its meaning to appreciation in the value of the real
estate by reason of improvements put thereon by the
alienee?   In *Thornburn v. Doscher*, 32 Fed. Rep., 810, the
precise question arose and the court held that "in estimat-
ing the value of a widow's dower in land aliened by the
husband in his lifetime, she ought to have the benefit
of the increase in value between the date of such aliena-
tion and the death of the husband, not arising from im-
provements made or placed thereon."   In *Allen v. McCoy*,
8 O., 418, it is said that in making assignment of dower,
the rule of value is to be taken at the time of assignment;
but all increased value from actual improvements on the
ground is to be excluded.   In *McClanahan v. Porter*, 10
Mo., 746, it was held that "where lands have increased in
value from extrinsic causes not connected with the labor or
expenditures of the alienee, the widow takes according to
the value at the time of the assignment."   In *Summers
v. Babb*, 13 Ill., 483, it was held: "A widow is only en-
titled to take her dower according to the valuation of the
land at the time of the alienation.   She is not dowable of
improvements put upon the land, but is entitled to the
benefit of its increased value, arising from other causes than
the labor and expenditure of the alienee."   In *Thompson
v. Morrow*, 5 Serg. & R. [Pa.], 289, Tilghman, C. J., dis-
cussing the point under consideration, said: "So far as
concerns improvements made by the alienee, it is agreed
that the tenant shall be protected from this hardship; but
as to any value which may chance to arise from the gradu-
ally increasing prosperity of the country, and not from
the labor or money of the alienee, it would be hard indeed
upon the widow, if she were precluded from taking her
share of it.   She runs the risk of any deterioration of the
estate, which may arise either from public misfortune, or the
negligence, or even the voluntary act of the alienee; for,
although he destroy the buildings erected by the husband,

the widow has no remedy, nor can she recover any more than one-third of the land as she finds it at the death of her husband." And in *Powell v. Monson & Brimfield Mfg. Co.*, 3 Mason [U. S.], 347, Mr. Justice Story, referring to the opinion of *Thompson v. Morrow, supra,* said: " This doctrine appears to me to stand upon solid principles, and the general analogies of the law. If the land has in the intermediate period risen in value, she receives the benefit; if it has depreciated, she sustains the loss. * * * If, on the other hand, the value of the land has increased solely from the improvements made upon it, and without those improvements it would have remained of the same value as at the time of the alienation, the old value, and not the improved value, is to be taken into consideration. For practical purposes it is impossible to make any distinction between the value of the improvements and the value resulting from the improvements; between improvements which operate on a part of the land, and those which operate upon the whole. Upon the whole my judgment is that the dower must be adjudged according to the value of the land in controversy at the time of the assignment, excluding all the increased value from the improvements actually made upon the premises by the alienees, leaving to the dowress the full benefit of any increase of value arising from circumstances unconnected with those improvements." We think the reasoning of these cases is unanswerable, and we therefore conclude that in estimating the value of real estate aliened by the husband during his marriage for the purpose of assigning his widow dower therein, the value of the real estate is to be estimated as it stood at the time of the assignment of dower, excluding the increase in value of the real estate resulting from improvements made thereon by the alienees after the date of the alienation. The judgment of the district court is

AFFIRMED.