STATE, EX REL. CENTRAL REALTY & INVESTMENT COMPANY, APPELLANT, V. ADAM MCMULLEN, GOVERNOR, ET AL., APPELLEES.

FILED MAY 9, 1930. No. 27187.

*Hall, Cline & Williams,* for appellant.

*C. A. Sorensen, Attorney General,* and *George W. Ayres, contra.*

Heard before Goss, C. J., Rose, Dean, Good, Thompson and Eberly, JJ., and Lightner, District Judge.

Dean, J.

The Central Realty & Investment Company, relator, began this action to obtain a writ of mandamus requiring the Honorables, Adam McMullen, then governor, Charles W. Pool, then secretary of state, and Dan Swanson, then and now commissioner of public lands and buildings, to execute and deliver to the relator a deed to a tract of 120 acres of saline lands located in Lancaster county. It is alleged that the tract was purchased from the state in 1904 by J. A. Buckstaff and "assigned to, and completed by," the relator. From a judgment denying the writ an appeal has been prosecuted to this court.

The relator alleges the following in respect of the lands involved herein, namely: That on June 15, 1904, the state of Nebraska entered into a contract by the terms of which the state of Nebraska agreed to sell and J. A. Buckstaff agreed to buy the northeast quarter of the southwest quarter and the north half of southeast quarter of section 21, township 10, range 6, Lancaster county. And the relator also alleges that the lands in suit consisted of a part of the saline lands received from the federal government by the state under an enabling act, and that assignments of the contract were filed and recorded in the office of the land commissioner and approved by him. It appears that the relator, as assignee thereof, paid to the Lancaster county treasurer the balance due on the above contract and a duplicate receipt was filed in the office of the land commissioner and approved as correct. The relator pleads that the contract was fully performed, and demanded that a deed be executed by the respondents and delivered to the realty company, but alleges that the respondents then, and

at all times thereafter, have refused to execute such deed.

Answers were filed by the secretary of state and by the land commissioner, wherein they severally allege, and plead as a defense, that the refusal to execute a deed to the above described lands was based on the fact that section 21 of the land contained salt springs. And the answer filed by the Honorable Governor McMullen was to the same effect, except that he stated that he was willing to execute a deed, but with the provision that all of the salt springs involved herein should be reserved in their entirety to the state. Before the present case was reached for trial in the district court the Honorable Arthur J. Weaver was elected governor and the Honorable Frank Marsh was elected secretary of state, and these state officers, as successors to the former officers named above, were substituted as respondents in the present suit.

Section 11 of the enabling act, in respect of saline lands in Nebraska, was passed and adopted April 19, 1864, by the congress, and reads:

"And be it further enacted, that all salt springs within said state, not exceeding twelve in number, with six sections of land adjoining, or as contiguous as may be to each, shall be granted to said state for its use, the said land to be selected by the governor thereof, within one year after the admission of the state, and when so selected to be used or disposed of on such terms, conditions, and regulations as the legislature shall direct." 13 U. S. St. at Large, ch. 59, p. 47.

And section 20, art. III, of the Nebraska Constitution, contains this language:

"The salt springs, coal, oil, minerals or other natural resources on or contained in the land belonging to the state shall never be alienated, but provision may be made by law for the leasing or development of the same."

The land in suit is contiguous to the twelve salt springs to which reference is herein made and they were selected under the above cited enabling act. Large sums of money were expended by the state, when the land was first ac-

quired, in the development of the saline lands, and wells were sunk to a great depth. From the evidence of certain resident witnesses, and also from certain field notes of the surveyor, it appears that the land in suit was then described as being "mostly low barren flat unfit for cultivation with a great many fine salt springs." And it appears that the body of water that is located on or near the land in controversy contains some salt. But the mere presence on the land of salt springs, with but a limited salt content, does not of course necessarily lead to the conclusion that such springs, or any part of the lands in question, are sufficiently charged with salt to make them of commercial value. Clearly the object in the adoption of section 20, art. III, of the Nebraska Constitution, was to prevent the alienation by the state of salt springs of commercial value. But where the brine yield of such salt springs, as shown by the report of the state geologist at the time in the present case, was not of sufficient salt content to warrant the extraction and manufacture of salt of merchantable quality, a deed may be executed and delivered to the purchaser of such saline lands, but with the reservation plainly stated in such deed that, if salt springs of commercial value should at any time after the execution and delivery of such deed or deeds develop in such lands, such salt springs shall belong to the state.

In *Davis' Admr. v. Weibbold*, 139 U. S. 507, the court said: "The exceptions of mineral lands from preemption and settlement and from grants to states for universities and schools, for the construction of public buildings, and in aid of railroads and other works of internal improvement, are not held to exclude all lands in which minerals may be found, but only those where the mineral is in sufficient quantity to add to their richness and to justify expenditure for its extraction, and known to be so at the date of the grant. There are vast tracts of country in the mining states which contain precious metals in small quantities, but not to a sufficient extent to justify the expense of their exploitation. It is not to such lands that the term

mineral in the sense of this statute is applicable. On this subject there has been great uniformity of decision by those courts of the states and of the United States which have had the most frequent occasion to consider the subject, and by the land department."

The following recital appears in 35 Land Decisions, 1, in respect of a grant to the territory of New Mexico for the benefit of its university, and is a part of section 3 of the act of June 21, 1898: " 'All saline lands in said territory' includes only such lands as contain common salt (sodium chloride), in its various forms of existence or deposit, and in commercially valuable quantities." And this observation appears in the body of the same decision: "Apparently, the slightest trace of sodium chloride in the soil or water is depended upon as determining the fact that the land which contains it is 'saline' in the legal sense of the term. If this extended use were permitted there is hardly a square mile in the United States west of the 100th meridian which could not with some justice be claimed as a 'saline.' "

In *Deffeback v. Hawke,* 115 U. S. 392, 404, Mr. Justice Field said: "It is plain * * * that no title from the United States to land known at the time of sale to be valuable for its minerals of gold, silver, cinnabar, or copper can be obtained under the preemption or homestead laws or the town-site laws, or in any other way than as prescribed by the laws specially authorizing the sale of such lands, except in the states of Michigan, Wisconsin, Minnesota, Missouri, and Kansas. We say 'land *known* at the time to be *valuable* for its minerals,' as there are vast tracts of public land in which minerals of different kinds are found, but not in such quantity as to justify expenditures in the effort to extract them. It is not to such lands that the term 'mineral' in the sense of the statute is applicable."

In *State of Indiana v. Miller,* 3 McLean (U. S. C. C.) 151, the court said: "Congress, by reserving salt springs, could only have intended to include those that were valuable, for the purpose of making salt. This is evident from

the reservation of as many contiguous sections as the president should deem necessary."

In *State v. McKelvie*, 111 Neb. 224, the action was there begun to require the execution of a deed in fee simple to certain common-school lands held by the relator under a sale certificate. We held that the relator was entitled to a deed to the land. And in *In re Hammond*, 83 Neb. 636, we said: "The language of the Constitution is to be interpreted with reference to the established laws, usages and customs of the country at the time of its adoption."

In *Hinz v. Musselshell Co.*, 82 Mont. 502, the Montana court said: "Our state Constitution must be construed in the light of the history of the commonwealth, the surrounding circumstances, the subject-matter under consideration, the object sought to be attained, as well as the system of laws which were in force in the territory at time of its adoption."

It is evident in the present case that, at the time the salt springs were selected, the belief persisted that the salt springs contained salt of much value and that they might be a source of great wealth to the state. And, as above mentioned, large sums of money were expended in the development of the manufacture of salt, but without corresponding results. In view of the conceded worth of salt springs to the people of any commonwealth, however, it behooves the state to reserve the title to such salt springs for the prospective needs of the present and future generations, should the salt springs be of commercial value later.

We conclude that the judgment of the district court must be and it hereby is reversed, with directions that the writ be allowed requiring respondents to issue a deed to the 120 acres of saline lands involved herein, with the reservation of salt springs, however, which may in the future be of commercial value, to the state, all as hereinbefore pointed out.

REVERSED.