ESTATE OF MAUDE V. GLASS, DECEASED, WILLIAM G. GLASS, ADMINISTRATOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Glass v. Commissioner
Docket No. 10752-78.
United States Tax Court
T.C. Memo 1981-191; 1981 Tax Ct. Memo LEXIS 555; 41 T.C.M. (CCH) 1303; T.C.M. (RIA) 81191; April 21, 1981. William G. Glass, pro se. Charles W. Jeglikowski, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined a deficiency of $ 15,724.44 in the Federal estate tax of decedent Maude V. Glass (Maude), who died on January 1, 1976. The issues are: (1) whether an affidavit purportedly signed by Roy G. Glass (Roy), decedent's surviving spouse, is admissible into the *556 evidence to be considered in resolving this case, pursuant to Federal Rules of Evidence 804(b)(5); and (2) whether Maude, at the time of her death, had any interest, within the meaning of section 2033, Internal Revenue Code of 1954, [1] in the house and land where she and Roy resided. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Maude died intestate on January 1, 1976. She resided with her husband, Roy, at 704 Northwest 39th Street, Oklahoma City, Oklahoma (the Residence) from 1939 until her death. The Residence qualified as homestead property under the laws of the State of Oklahoma. William G. Glass (William), the son of Maude and Roy, is the administrator of the estate of Maude V. Glass (the estate), and resides at Sherman Oaks, California. A Federal estate tax return for the estate was filed June 21, 1976, with the Internal Revenue Service Center, Austin, Texas. Roy and Maude were husband and wife *557 from July 11, 1921, until January 1, 1976. On October 31, 1938, Roy contracted to exchange his and his wife's old residence at 4300 Butler Place, Oklahoma City, for the Residence at 704 Northwest 39th Street, Oklahoma City. The exchange was carried out and title to the Residence was vested solely in Maude by a warranty deed dated November 26, 1938. The deed recited that it was "delivered" on this date. It was subsequently recorded in Oklahoma County on November 29, 1938. The deed was kept in safety deposit boxes at the various banks where Roy worked over the years. When Maude died, the deed was located in a safety deposit box rented in the name of "Mr. and Mrs. Roy G. Glass." On July 25, 1939, the Prudential Insurance Company notified Roy that it had approved his application for a mortgage loan of $ 10,300 on the Residence. During her married life, Maude received no monetary compensation for household services she performed and was not gainfully employed outside the home. On February 15, 1975, Maude established a revocable living trust to which she transferred certain property, not including the Residence. Maude established a revocable real estate trust by a declaration *558 of trust dated November 26, 1975, to which trust she attempted to transfer the Residence by quitclaim deed bearing the same date. Roy was not aware of either the establishment of the real estate trust or the attempted conveyance of the Residence to the trust. He did not join in the purported conveyance. The declaration of trust and quitclaim deed were recorded in the State of Oklahoma. After Maude's death, William, as administrator of her estate, became desirous of selling the Residence because it was no longer occupied and was expensive to maintain. William made a preliminary agreement with an Oklahoma City attorney to sell the Residence. Under the terms of the real estate trust of November 26, 1975, William was to succeed Maude as trustee. His only duty as trustee was to transfer the title to the Residence from the real estate trust to himself. He executed a warranty deed purporting to effect such transfer January 9, 1976. When the attorney discovered that Roy had not joined in the original conveyance in trust, however, he informed William that such conveyance was void and that the Residence could only be transferred to him through the probate process. Accordingly, *559 the sale was made under the supervision and with the approval of the Oklahoma County District Court, pursuant to its probate jurisdiction. The Residence was sold through the probate process on May 4, 1977, for $ 62,500. After the Internal Revenue Service began the examination of the Federal estate tax return William prepared an affidavit for Roy to execute which bore on the ownership of the Residence. William took the draft affidavit to the nursing home where Roy resided. At that time Roy was 86 years of age and unable to care for himself. William read the draft affidavit to Roy and Roy did not read it himself. The purported affidavit was notarized but the notary public was not present when it was executed and it was notarized some time after being executed. Roy was unavailable to testify at trial. William included the Residence in schedule A of the Estate Tax Return at a value of $ 18,840. In his statutory notice, the Commissioner determined that the value of the Residence at Maude's death was $ 62,500. William now contends that none of the value of the Residence should have been included in the gross estate. The parties agree that the value of the Residence on January 1, 1976, was *560 $ 50,000. OPINION Issue 1. Admissibility of Affidavit
At trial, William offered into evidence a document which purported to be an affidavit of Roy concerning ownership of the Residence. Respondent objected to its admission into evidence on the grounds that it was hearsay and we reserved ruling on its admissibility. We commence our analysis by determining whether the statements contained in the purported affidavit were actually "hearsay." Federal Rules of Evidence 801(c) defines "hearsay" as a "statement, other than one made by the declarant while testifying at the trial * * *, offered in evidence to prove the truth of the matter asserted." Because the purported affidavit was offered to prove the truth of the assertions which it contained, it is hearsay. It is not admissible unless it falls within one of the "hearsay exceptions" set forth in the Federal Rules of Evidence. Fed. R. Evid. 802. Rule 803 contains hearsay exceptions which apply regardless of whether the declarant was available to testify at trial or not. Underlying Rule 803 is "the theory that under appropriate circumstances a hearsay *561 statement may possess circumstantial guarantees of trustworthiness sufficient to justify nonproduction of the declarant in person at the trial even though he may be available." Advisory Committee on Rules of Evidence, Preliminary Draft of Proposed Rules of Evidence for the United States District Courts and Magistrates (1969), reprinted in S. Saltzburg and K. Redden, Federal Rules of Evidence Manual 539 (2d ed. 1977) (hereinafter Advisory Committee Draft). The exceptions set forth in Rule 804, however, apply only when the declarant is unavailable to testify at trial. The theory of this rule differs somewhat from that of Rule 803. While permitting the use of hearsay having special guarantees of trustworthiness, the rule also expresses a preference for admitting hearsay evidence over an otherwise complete loss of the declarant's evidence. Advisory Committee Draft, supra at 606. Rules 803 and 804 enumerate specific types of hearsay statements which are admissible in evidence, e.g., a statement relating to a startling event made while the declarant was under stress of excitement caused by the event, Rule 803(2), and a statement made by a declarant while believing that his death *562 was imminent concerning the circumstances of what he believed to be his impending death, Rule 804(b)(2). Suffice it to say that none of the specific exceptions apply to the purported affidavit offered in the instant case. Rules 803(24) and 804(b)(5), however, permit the admission of: [a] statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. * * * Thus, to be admissible, the purported affidavit must have circumstantial guarantees of trustworthiness equivalent to statements covered by the specific exceptions. See United States v. Bailey, 581 F.2d 341 (3d Cir. 1978). It seems clear to us that the purported affidavit has very little, if any, circumstantial guarantees of trustworthiness. It was not *563 in declarant's (Roy's) own words; Roy did not prepare it; and he did not read it. At the time he signed it, Roy was advanced in years and lived in a nursing home because he was unable to care for himself. He did not hear the document read nor sign it in a notary's presence under oath. We hold that the affidavit is not admissible into evidence. Our findings of fact are, accordingly, made without any consideration of this document. Issue 2. Includibility of the Value of the Residence in Maude's Gross Estate
Section 2033 provides: SEC. 2033. PROPERTY IN WHICH THE DECEDENT HAD AN INTEREST. The value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death. Section 2033 mandates inclusion in the gross estate of the value of all property beneficially owned by the decedent at the time of her death. Sec. 20.2033-1(a), Estate Tax Regulations.Thus, legal title is not in itself dispositive. The decedent's representative may show that the beneficial ownership of property, the value of which the Commissioner seeks to include in the gross estate, was in one other than the decedent as, for *564 example, where decedent held the property upon a trust for another. It should be pointed out, however, that the Commissioner's determination that a decedent beneficially owned property at death is presumptively correct and that the estate bears the burden of proving such determination erroneous. Estate of Rand v. Commissioner, 28 T.C. 1002, 1006 (1957); Estate of MacRae v. Commissioner, 30 B.T.A. 1087, 1089 (1934). The parties stipulated that the residence was homestead property. Under Oklahoma law, if one spouse attempts to convey a homestead estate such attempt without the joinder of the other spouse is void. Okla. Stat. Ann. tit. 16, sec. 4 (West Supp. 1980-81); Atkinson v. Barr, 428 P.2d 316, 319 (Okla. 1967). Accordingly, the attempted conveyance by the decedent to the revocable trust is void and title was in Maude's name when she died. Legal title is strong evidence of beneficial ownership. William argues, however, that Maude merely held "naked" legal title to the Residence and that, at her death, Roy possessed beneficial ownership, not having really parted with it in 1938. We disagree. Under *565 Oklahoma law, "The rule is, where a husband purchases land with his own money and takes title thereto in the name of his wife or in the joint name of himself and wife, no trust arises in favor of the husband by reason thereof in the lands standing in the name of the wife, but the presumption of law is, in the absence of evidence to the contrary, that an advancement or gift was intended." [Fletcher v. Fletcher, 244 P.2d 827, 830 (Okl. 1952).] Thus, Roy presumptively conveyed both legal and equitable title to the Residence to Maude in 1938. William has not presented any evidence which would overcome this presumption. It is true that Roy lived at the Residence and that the costs of the Residence were paid from his earnings. However, this is not inconsistent with Maude's ownership, as she and Roy were married and Roy accordingly benefited from his payment of the costs.There is no evidence that the value of Maude's household services was any less than her share of these costs. Roy also applied for and was granted a mortgage loan on the Residence. However, one need not have title to real estate simply to apply for and obtain a loan to be secured by such real *566 estate, so long as the person who does have title validly executes the mortgage instrument. The relevant mortgage instrument was not in evidence. Petitioner has neither alleged nor proven that it was not validly executed by Maude. Because William has not proven it erroneous by a preponderance of the evidence, we uphold the Commissioner's determination that Maude beneficially owned the Residence at the time of her death within the meaning of section 2033. Because Maude died intestate owning the Residence, it passed under Oklahoma's statute of descent and distribution, Okla. Stat. Ann. tit. 84, sec. 213 (West 1951). Under this statute, Roy and William each inherited a one-half undivided interest in the Residence. Respondent concedes that the interest passing to Roy qualifies for the marital deduction, pursuant to section 2056. The amount of the deduction is to be determined in the Rule 155 computation. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩