**ESTATE OF Helen M. JOHNSON, Deceased, Lolita McNeill Muhm, Independent Executor, Petitioner-Appellee,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.**

No. 82–4074.

United States Court of Appeals, Fifth Circuit.

Oct. 24, 1983.

Rehearing Denied Nov. 30, 1983.

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Chief Appellate Sec., James F. Miller, Robert A. Bernstein, Justice Dept., Tax Div., Washington, D.C., for respondent-appellant.

P. Allan Port, Houston, Tex., for plaintiff-appellee.

Before CLARK, THORNBERRY and RANDALL, Circuit Judges.

RANDALL, Circuit Judge:

The Commissioner of Internal Revenue appeals a decision of the United States Tax Court allowing the deduction of the value of the homestead interest of the surviving spouse from the value of property included in the decedent's gross estate. Finding that the interest of the surviving spouse created by the Texas homestead law is "by virtue of a statute creating an estate in lieu of dower or curtesy" within the meaning of section 2034 of the Internal Revenue Code ("Code"), I.R.C. § 2034 (1976), we reverse the decision of the Tax Court, 77 T.C. 120,

and remand with instructions to enter judgment for the Commissioner.

I.

At issue in the present case is whether the value of a decedent's homestead property should be reduced for Federal estate tax purposes by the value of the surviving spouse's interest in the homestead. Because this case raises difficult questions of law involving the interrelationship between the Federal estate tax and Texas homestead laws, it will first be useful, in order to facilitate a more complete understanding of the issues, to briefly outline the statutory schemes involved in this case.

A.

Congress has, since 1916,[1] levied a graduated tax upon the transfer of a decedent's taxable estate. Section 2001 of the current Code imposes a tax "on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States." I.R.C. § 2001 (1976). The taxable estate is determined by subtracting from the "gross estate" certain deductions authorized by the statute. I.R.C. § 2051 (1976).[2] Therefore, the first step in determining a decedent's Federal estate tax liability is a determination of the gross estate.[3]

Section 2031(a) provides that the gross estate is the date-of-death value[4] of all property owned by the decedent. I.R.C. § 2031(a) (1976).[5] The regulations to that

---

1. Revenue Act of 1916, Pub.L. No. 64–271, §§ 200 et seq., 39 Stat. 756, 777 (1916).

2. These allowable deductions include: expenses, indebtedness, and taxes, I.R.C. § 2053; losses, I.R.C. § 2054; charitable transfers, I.R.C. § 2055; and a marital allowance, I.R.C. § 2056.

3. Because the present case involves only questions regarding inclusions in the gross estate, this step is the only one with which we need be concerned.

4. As noted by Judge Wisdom in *United States v. Land,* 303 F.2d 170 (5th Cir.1962):
   Brief as is the instant of death, the court must pinpoint its valuation at this instant— the moment of truth, when the ownership of

the decedent ends and the ownership of the successors begins. It is a fallacy, therefore, to argue value before-or-after death on the notion that valuation must be determined by the value either of the interest that ceases or of the interest that begins. Instead, the valuation is determined by *the interest that passes,* and the value of the interest before or after death is pertinent only as it serves to indicate the value *at* death.
303 F.2d at 172 (emphasis in original).

5. Section 2031(a) states:
   (a) *General.*—The value of the gross estate of the decedent shall be determined by including to the extent provided for in this part, the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated.

section further provide that this value may be calculated by totaling the value of the interests described in sections 2033 through 2044. Treas.Reg. § 20.2031–1(a) (1958).[6] Of such interests, only those set forth in sections 2033 and 2034 have direct relevance to the instant case. Section 2033, termed the generic section,[7] includes within the gross estate, "the value of all property to the extent of the interest therein of the decedent at the time of his death." I.R.C. § 2033 (1976).[8] Section 2034 states that "the value of the gross estate shall include the value of all property to the extent of any interest therein of the surviving spouse, existing at the time of the decedent's death as dower or curtesy,[9] or by virtue of a statute creating an estate in lieu of dower or curtesy." I.R.C. § 2034 (1976).[10] Thus,

---

6. Regulation 20.2031–1(a) provides in pertinent part:

   (a) *Definition of gross estate.* Except as otherwise provided in this paragraph the value of the gross estate of a decedent ... is the total value of the interests described in sections 2033 through 2044.

7. Section 2033 is termed the "generic" section because it is "[t]he shortest in language and the broadest in application of any of the 10 categories of includible interests...." 2 J. Mertens, *Law of Federal and Gift Estate Taxation* § 14.-03, at 81 (1959).

8. The regulation to this section states:

   § 20.2033–1 *Property in which the decedent had an interest.*

   (a) *In general.* The gross estate of a decedent ... includes under section 2033 the value of all property, whether real or personal, tangible or intangible, and wherever situated, beneficially owned by the decedent at the time of his death....

   (b) *Miscellaneous examples....* Property subject to homestead or other exemptions under local law is included in the gross estate....

   Treas.Reg. § 20.2033–1 (1958).

9. The term "dower" generally refers to the interest a widow takes in the estate of her deceased husband. Dower is a creation of the English common law, *Hopkins v. Magruder,* 34 F.Supp. 381 (1940), developed for the purpose of providing a means of support for widows and their children. *Schoellkopf v. DeVry,* 366 Ill. 39, 7 N.E.2d 757 (1937); *Butler v. Fitzgerald,* 43 Neb. 192, 61 N.W. 640 (1895). Because a spouse could never be an heir at common law, it became necessary to foster other means to financially protect the widow; thus, dower developed. Initially only a return of the gift given the husband upon the marriage, the widow was later given the right to "sit by the fire," i.e., to maintain a home on her husband's lands for life. Eventually, dower developed into what is now its customary definition: a wife is endowed for life of a third of all real estate of which her deceased husband was beneficially seized at any time during the marriage. *Mayburry v. Brien,* 15 Pet. (40 U.S.) 21, 10 L.Ed. 646 (1841); *Shackelford v. Shackelford,* 181 Va. 869, 27 S.E.2d 354 (1943). *See generally* Haskins, *The Development of Common Law Dower,* 62 Harv.L.Rev. 42 (1948). In some jurisdictions, this third must include the dwelling house; however, in most jurisdictions this is not the case. In the majority of jurisdictions, the right to "sit by the fire" has evolved into the right of "quarantine," i.e., the widow's right to occupy the dwelling house until her dower is apportioned. *See generally* 4A G. Thompson, *Real Property* § 1926, at 172–73 (1979). As a practical matter, the widow's dower share will include the dwelling house, but this result is in no way guaranteed. In other jurisdictions, however, the right to "sit by the fire" evolved into a requirement that the one-third interest of the widow encompass the dwelling house. *See, e.g., Rash v. Bogart,* 226 Ala. 284, 146 So. 814 (1933); *see also* Section IV, *infra* (setting forth short-lived Texas dower statute). The wife's dower is protected during the husband's lifetime by a limitation on his right of conveyance. While the husband can convey the property in which the dower interest has attached, the property is conveyed subject to the wife's right of dower, which she may assert against the holder of the property upon her husband's death. *Williams v. Williams,* 89 Ky. 381, 12 S.W. 760 (1889). Today, common law dower has been abolished in most states and replaced by statutes either preserving dower in modified form or substituting a new statutory concept. *See generally* Sullivan, *The Passing of Dower or Curtesy,* 19 Geo.L.J. 306 (1931).

   Curtesy is the corresponding right of the husband by which he is entitled, on the death of his wife, to a life estate in the lands of which she was seized during her coverture, provided they have had lawful issue born alive which might have been capable of inheriting the estate. In some jurisdictions, there is no distinction made between the wife's and husband's rights and both are merely characterized as dower.

10. The regulation to this section provides:

    § 20.2034–1. *Dower or curtesy interests.*

    A decedent's gross estate includes under section 2034 any interest in property of the decedent's surviving spouse existing at the time of the decedent's death as dower or curtesy, or any interest created by statute in lieu thereof (although such other interest

the gross estate includes the date of death value of the interest in property owned by

the decedent, as well as the interest of the surviving spouse represented by dower or

may differ in character from dower or curtesy). Thus, the full value of property is included in the decedent's gross estate, without deduction of such an interest of the surviving husband or wife, and without regard to when the right to such an interest arose.

Treas.Reg. § 20.2034–1 (1958). This regulation has survived without significant change since its original promulgation. *See* Treas.Reg. 37, art. 7, amended by T.D. 3165, 23 Treas.Decs. 659 (1921); Treas.Reg. 70, art. 14 (1926); Treas.Reg. 70, art. 14 (1929); Treas.Reg. 80, art. 14 (1934); Treas.Reg. 80, art. 14 (1937); Treas.Reg. 105, § 81.14 (1939).

Section 2034 was not included in the original 1916 Act establishing the Federal estate tax. The predecessor to section 2034 was added in 1918. Revenue Act of 1918, Pub.L. No. 65–254, § 402(b), 40 Stat. 1051, 1097 (1918). Section 402 of the 1918 Act provided in pertinent part:

Sec. 402. [T]he value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

. . . .

(b) To the extent of any interest therein of the surviving spouse, existing at the time of the decedent's death as dower, curtesy, or by virtue of a statute creating an estate in lieu of dower or curtesy.

40 Stat. at 1097.

The committee report to the 1918 Act explains why this provision was added:

Congress for the first time, by the revenue act of September 8, 1916, levied a tax (a graduated tax) upon the transfer of the net estate of a decedent. In determining the net estate an exemption of $50,000 is allowed.

This form of taxation has now been in operation for about two years and sufficient opportunity has been afforded those engaged in administering the law to observe and report to Congress the effect of the existing law and suggestions for amendments which will bring out more clearly the intention which Congress desired to prevail at the time of the original imposition of an estate tax.

. . . .

Section 402 of this bill, which takes the place of section 202 of the original act, has been revised so as to contain a provision specifically including in the gross estate dower, curtesy, or any estate created in lieu of dower or curtesy. The distinction between dower and curtesy interest and property passing to wife or husband by will or intestate succession is technical rather than real, at least in the consideration of the question as to whether they should be subject to estate tax. The proposed amendment is for the purpose of making it clear that such interests are to be included.

It was the intention of the framers of the original act that dower, curtesy, and estates created in lieu of dower or curtesy should be included in the gross estate, and your committee believes that the Treasury Department has correctly ruled in requiring them to be so included. Since a dispute has arisen with reference to this question, your committee deems it advisable to provide specifically that these estates shall be included in the gross estate.

H.R.Rep. No. 767, 65th Cong., 2d Sess. 41 (1918).

In introducing the 1918 Act, its sponsor, Rep. Claude Kitchin stated: "We have added a provision specifically including dower and curtesy in the gross estate. It was the intention of the framers of the original act that dower and curtesy should be included, and it is the opinion of the committee that the Treasury Department has correctly ruled in requiring them to be so included." 56 Cong.Rec. 10088, 10089 (1918).

The dispute referred to in the committee report arose because of the wording of section 202(a) of the 1916 Act (the predecessor to section 2033). That section included in the gross estate the value of property owned by decedent "[t]o the extent of any interest therein of the decedent at the time of his death which after his death is subject to the payment of the charges against his estate and the expenses of its administration and is subject to distribution as part of his estate." 39 Stat. 756, at 777. Because dower and curtesy were often not subject to payment of charges against the deceased's estate under state law, these interests escaped taxation. *See Schuette v. Bowers,* 40 F.2d 208, 210 (2d Cir.1913). Even after the passage of the dower provision, the dispute continued as to decedents dying before the effective date of the 1918 Act. *See Randolph v. Craig,* 267 F. 993 (M.D.Tenn.1920) (dower excluded from gross estate because not subject to charges and administrative expenses or to distribution as part of the estate).

Section 402(b) remained substantially unchanged during its evolution into the present section 2034. *See* Revenue Act of 1921, Pub.L. No. 67–98, § 402(b), 42 Stat. 227, 278 (1921); Revenue Act of 1924, Pub.L. No. 68–176, § 302(b), 43 Stat. 253, 304 (1924); Revenue Act of 1926, Pub.L. No. 69–20, § 302(b), 44 Stat. 9, 70 (1926); Revenue Act of 1934, Pub.L. No. 73–216, § 404, 48 Stat. 680, 754 (1934) (adding words "except real property situated outside the United States"); Internal Revenue Code of 1939, Pub.L. No. 76–1, § 811(b), 53 Stat. 1, 120 (1939); Internal Revenue Code of 1954, Pub.L. No. 83–591, § 2034, 68A Stat. 3, 381 (1954); Revenue Act of 1962, Pub.L. No. 87–834, § 18(a)(2)(B), 76 Stat. 960, 1052 (1962) (deleting words "except real property situated outside the United States").

curtesy or an interest created in lieu of dower or curtesy.

## B.

■ Homestead laws are a uniquely American institution, having their origins in the great debtor revolution of the era of "Jacksonian Democracy;" [11] as human life became more important than money, the homestead [12] began to find a peculiar favor in the eyes of the law of most states, which sought to afford protection to the home and family against the rapacity of creditors. The broad purpose of these laws was to protect the family from dependence and pauperism. *See Lehman v. Cottrell,* 298 Ill.App. 434, 19 N.E.2d 111 (1939); *Ramsey v. Lake County,* 70 S.D. 61, 14 N.W.2d 125 (1944). Because public policy is opposed to pauperized widows and children, *Clark v.*

*Davis,* 37 Wash.2d 850, 226 P.2d 904 (1951), the homestead laws are based not only upon a tender regard for the family, but also contribute to the stability and welfare of the state. *Andrews v. Security National Bank of Wichita Falls,* 121 Tex. 409, 50 S.W.2d 253, 256 (1932).

Texas' was the earliest homestead law, originally enacted in 1839. 1839 Laws of the Republic of Texas, First Session of the Third Congress, 125.[13] In its present form, the Texas homestead law consists of three distinct features: [14] first, the homestead [15] is exempted from the reach of creditors, Tex. Const. art. 16, § 50; [16] second, limitations are placed upon the conveyance of the homestead, in that the homestead cannot be sold by one spouse without the consent of

**11.** For two excellent discourses on the origins of homestead laws, see McKnight, *Protection of the Family Home from Seizure by Creditors: The Sources and Evolution of a Legal Principle,* 86 Southwestern Historical Quarterly 369 (1983), and 4A G. Thompson, *Real Property* § 1932, at 194–197 (1979).

**12.** "Homestead," in both the popular and legal sense, means the "homeplace" or family home, and also property which is protected because it is the family home. *Clark v. Nirenbaum,* 8 F.2d 451 (5th Cir.1925), *cert. denied sub. nom. Powell v. Anderson,* 270 U.S. 649, 46 S.Ct. 349, 70 L.Ed. 780 (1926); *Anderson v. Sessions,* 93 Tex. 279, 51 S.W. 874 (1899). *See generally* McKnight, *supra* note 11. A more rhetorical definition is found in *O'Hare v. Bismark Bank,* 45 N.D. 641, 178 N.W. 1017 (1920): "The [homestead] is the place where he commonly resides; a place to which when absent he returns like a bee to its hive, a carrier pigeon to its home, a bird to its nest." 178 N.W. at 1017.

**13.** The 1839 homestead law contained only an exemption from creditors. A provision requiring joinder of both spouses to convey the homestead was added in 1841. 1841 Laws of the Republic of Texas, Fifth Congress, 144. A provision reserving the homestead to the surviving spouse after either's death was adopted in 1843. 1843 Laws of the Republic of Texas, Sixth Congress, 14.

**14.** *See United States v. Rodgers,* —— U.S. ——, ——, 103 S.Ct. 2132, 2137–38, 76 L.Ed.2d 236 (1983).

**15.** Article 16, section 51 of the Texas Constitution defines "homestead" for purposes of Texas law:
Sec. 51. The homestead, not in a town or city, shall consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon; the homestead in a city, town or village, shall consist of a lot, or lots, not to exceed in value Ten Thousand Dollars, at the time of their designation as the homestead, without reference to the value of any improvements thereon; provided, that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the homestead claimant, whether a single adult person, or the head of a family; provided also, that any temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired.
Tex. Const. art. 16, § 51.

**16.** Section 50 provides in pertinent part:
The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon, and in this last case only when the work and material are contracted for in writing, with the consent of both spouses, in the case of a family homestead, given in the same manner as is required in making a sale and conveyance of the homestead.... No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the owner alone, or together with his or her spouse, in case the owner is married. All pretended sales of the homestead involving any condition of defeasance shall be void.
Tex. Const. art. 16, § 50.

the other, regardless of whether the homestead property is community property or the separate property [17] of either spouse, id.; [18] third, upon the death of either spouse, the homestead is subject to occupancy by the surviving spouse so long as the surviving spouse elects to use it as a homestead, Tex. Const. art. 16, § 52.[19] It is the execution or forced sale by the constitution and laws of the state.

Tex. Probate Code Ann. § 271 (Vernon 1980).

Section 272 of the Texas Probate Code further provides:

§ 272.   *To Whom Delivered*

The exempt property set apart to the surviving spouse and children shall be delivered by the executor or administrator without delay as follows: (a) If there be a surviving spouse and no children, or if the children be the children of the surviving spouse. (b) If there be children and no surviving spouse, such property, except the homestead, shall be delivered to such children if they be of lawful age, or to their guardian if they be minors. (c) If there be children of the deceased of whom the surviving spouse is not the parent, the share of such children in such exempted property, except the homestead, shall be delivered to such children if they be of lawful age, or to their guardian, if they be minors. (d) In all cases, the homestead shall be delivered to the surviving spouse, if there be one, and if there be no surviving spouse, to the guardian of the minor children and unmarried children, if any, living with the family.

Tex.Prob.Code Ann. § 272 (Vernon 1980).

The forced heirship rights of the surviving spouse contained in section 52 were not a part of the original homestead law. The original homestead law was merely an exemption from creditors. The forced heirship provision was not enacted until 1843, when the Congress of the Republic of Texas adopted "An Act To amend the Probate Law." 1843 Laws of the Republic of Texas, Sixth Congress, 14. This act provided in pertinent part:

Section 1.   Be it enacted by the Senate and House of Representatives of the Republic of Texas in Congress assembled, That hereafter, when any person shall die intestate, or shall not expressly forbid it by will, the same amount of property, and the same kind—if so much belong to the estate in kind—that is exempt from sale under fieri facias, or execution, by an act approved twenty fifth January, one thousand eight hundred and thirty nine, entitled "an act to exempt certain property therein named from execution," be, and the same is hereby declared to be exempt from sale by order from any Probate Court.

Sec. 2.   Be it further enacted, That when an inventory is made out and returned to the Probate Court, of the property and effects belonging to a succession, the Judge thereof

---

**17.** Texas is one of the minority of states which operates under a community property system. Simply stated, in a community property state, property is characterized as either community or separate. Generally, the property brought into the marriage by either spouse remains his or her separate property and property obtained during the marriage becomes community property, in which each spouse has an undivided one-half interest.

**18.** A provision of section 50 not quoted above states: "[Nor] may the owner or claimant of the property claimed as homestead, if married, sell or abandon the homestead without the consent of the other spouse, given in such manner as may be prescribed by law." Tex. Const. art. 16, § 50.

Similarly, section 5.81 of the Texas Family Code provides:

Whether the homestead is the separate property of either spouse or community property, neither spouse may sell, convey, or encumber it without the joinder of the other spouse. . . .

Tex.Fam.Code Ann. § 5.81 (Vernon 1975).

**19.** Section 52 provides:

§ 52.   *Descent and distribution of homestead; restrictions on partition.*

Sec. 52.   On the death of the husband or wife, or both, the homestead shall descend and vest in like manner as other real property of the deceased, and shall be governed by the same laws of descent and distribution, but it shall not be partitioned among the heirs of the deceased during the lifetime of the surviving husband or wife, or so long as the survivor may elect to use or occupy the same as a homestead, or so long as the guardian of the minor children of the deceased may be permitted, under the order of the proper court having the jurisdiction, to use and occupy the same.

Tex. Const. art. 16, § 52.

Similarly, section 271 of the Texas Probate Code states:

§ 271.   *Exempt Property to Be Set Apart*

Immediately after the inventory, appraisement, and list of claims have been approved, the court shall, by order, set apart for the use and benefit of the surviving spouse and minor children and unmarried children remaining with the family of the deceased, all such property of the estate as is exempt from

latter of these—waivable forced heirship rights—which has particular relevance here.[20]

■ Unlike the majority of states, in which the homestead interest has been held to be merely an inchoate personal privilege, see, e.g., In re Noble's Estate, 73 So.2d 873 (Fla.1954); Mercer v. McKeel, 188 Okl. 208, 108 P.2d 138 (1940); Radtke v. Radtke, 247 Wis. 330, 19 N.W.2d 169 (1945); Snortum v. Snortum, 155 Minn. 230, 193 N.W. 304 (1923); Lear v. Lear, 234 Ky. 369, 28 S.W.2d 32 (1930); Neset v. Rudman, 74 N.W.2d 826 (N.D.1956), the homestead interest in Texas is an estate in the property itself which vests at marriage. Woods v. Alvarado State Bank, 118 Tex. 586, 594, 19 S.W.2d 35, 37 (1929); Crews v. General Crude Oil Co., 287 S.W.2d 243, 250 (Tex.Civ.App.1955). As the U.S. Supreme Court recently noted in United States v. Rodgers, —— U.S. ——, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983), "the Texas homestead right is not a mere statutory entitlement, but a vested property right." 103 S.Ct. at 2139. Thus, the nature and extent of the homestead interest in Texas has been interpreted to grant a greater interest than the homestead laws of most states.

## II.

The facts of the present case are uncontested. Helen M. Johnson ("decedent"), a resident of Texas, died March 1, 1975, sur-

vived by her husband Elmer. At her death, decedent owned, as her separate property, a lot on which a dwelling was situated[21] and a one-half interest in a parcel of agricultural land,[22] which were claimed by decedent and her spouse as their homestead.[23] Under the terms of her will and holographic codicil, decedent devised this homestead property to her niece and nephew. After decedent's death, the husband asserted his right under Texas law to continue to use and occupy both tracts as his homestead.[24]

When decedent's Federal estate tax return was filed on November 25, 1975, the date-of-death values of the homestead property were reported in accordance with an appraisal performed by G. Wayne Ford, an expert real estate appraiser, who treated the homestead property as encumbered by the surviving spouse's homestead interest. The appraiser opined that the value of the homestead property at decedent's death was substantially less than would be the value of the property had it not been so encumbered. The Commissioner redetermined the date-of-death value of the homestead property without any deduction for the homestead interest of the surviving spouse and determined a deficiency of $51,687 in decedent's Federal estate tax.

## III.

On February 23, 1979, the decedent's estate,[25] the taxpayer herein, filed a petition

---

shall set apart the property and articles as contemplated in the preceding section, for the sole use and benefit of the widow and children of the deceased.

This provision was continued in slightly modified form in section 52 when the Constitution of 1876 (the present governing document) was adopted.

**20.** The first two features are irrelevant to the issue in this case. The exemption from creditors cannot affect the value of the property because the exemption does not transfer with the property. Such exemption exists solely due to the homestead claim of the seller. The same property has no exemption in the hands of the purchaser unless he asserts an independent homestead claim. The joint consent limitation cannot affect the date-of-death value of the property because this limitation disappears at death.

**21.** This lot consisted of 2.4378 acres, located in Brazoria County, Texas, in which decedent owned the entire fee interest.

**22.** This tract consisted of 297.563 acres, also located in Brazoria County, Texas, in which decedent owned an undivided one-half interest. The other undivided one-half interest in this tract was owned by decedent's brother.

**23.** Under article 16, section 51 of the Texas Constitution, a homestead outside of a municipality may consist of one or more parcels not exceeding a combined total of 200 acres. See supra note 15.

**24.** Although decedent's brother had been devised no interest in the homestead property, he apparently desired that decedent's husband not use and occupy as a homestead the tract in which he owned an undivided one-half interest.

**25.** Lolita Muhm, present executor of decedent's estate, is the successor to Perry Reese McNeill,

for redetermination with the Tax Court. The parties entered into comprehensive stipulations and submitted the case for decision based upon the stipulated record. At the time of submission, the sole issue remaining before the Tax Court was whether the date-of-death value of homestead property owned by the decedent should be reduced by the value of the surviving spouse's elective right to use and occupy the homestead during his lifetime.[26]

Prior cases had generally accepted that homestead rights are includible in the gross estate. *See United States v. Hiles,* 318 F.2d 56, 60 (5th Cir.1963); *Estate of Hinds v. Commissioner,* 11 T.C. 314, 325 (1948), *aff'd on other grounds,* 180 F.2d 930 (5th Cir. 1950), *overruled, Estate of Johnson v. Commissioner,* 77 T.C. 120, 128 (1981); *cf. Mayer v. Reinecke,* 130 F.2d 350, 353 (7th Cir.), *cert. denied,* 317 U.S. 684, 63 S.Ct. 257, 87 L.Ed. 548 (1942). Indeed, just months before its decision in the present case, the Tax Court held that Oklahoma homestead property is includible in the gross estate at full value. *Estate of Glass v. Commissioner,* 76 T.C. 949, 41 T.C.M. (CCH) 1303, 1306 (1981). Commentators had considered the question

a settled issue. *See, e.g.,* R. Stephens, G. Maxfield & S. Lind, *Federal Estate and Gift Taxation* ¶ 4.05(3), at 4–91 (5th ed. 1983); 2 J. Mertens, *Law of Federal Gift and Estate Taxation* § 14.06, at 113 (1955); Comment, *Federal Estate and State Inheritance Tax Aspects of the Family Allowance, the Homestead, and the In Lieu of Homestead Awards,* 37 Wash.L.Rev. 435, 438 (1962). However, Judge Ekman, writing for the majority in the present case, held that homestead rights are encumbrances that reduce the fair market value of the homestead property. In holding that the husband's homestead interest was not includible in the decedent's gross estate, the majority expressly overruled the long-standing rule announced in *Estate of Hinds v. Commissioner,* 11 T.C. 314 (1948), requiring the inclusion of Texas homestead property in a decedent's gross estate without reduction for the value of the homestead interest of the surviving spouse.[27]

Recognizing that Treasury Regulation 20.2033–1(b) [28] requires the inclusion of the homestead property in the gross estate, the majority characterized the issue as one of valuation: [29] "[T]he fact that property is

Sr. While executor of Mrs. Johnson's estate, it was Mr. McNeill who filed the Federal estate tax return in question.

**26.** The parties stipulated that if the surviving spouse's homestead interests did not affect the amount includible, the two parcels of property had an aggregate date-of-death value of $173,-945.50; the value as discounted to reflect the husband's life estate under the homestead law was $92,233.73.

**27.** In *Estate of Hinds,* the Tax Court dealt with the homestead issue in rather conclusory fashion:

Petitioner contends, however, that in calculating the gross estate there should be deducted from decedent's community half interest the life homestead interest of his wife, Minnie H.M. Hinds, the said homestead interest being a vested life interest which was a burden upon the decedent's community interest prior to and at the time of his death. We think this contention is without merit. The Federal estate tax laws do not contemplate any such deduction. There is nothing particularly unusual about the laws of Texas with

respect to the surviving spouse having the right of life occupancy to the homestead property. Many states have laws of a similar nature. The regulations specifically provide that property subject to homestead or other exemptions under local law is includible as part of the gross estate. *See Regulations* 105, Sec. 81.13 [currently Reg. § 20.2033–1]. Here the decedent had a vested community one-half interest in the homestead property, which interest was terminated by his death. The community one-half interest is, therefore, includible in the decedent's estate. 11 T.C. at 325.

**28.** See *supra* note 8.

**29.** The taxpayer presented the Tax Court with two alternative methods of characterizing the issue under section 2033. The first, not expressly adopted by the Tax Court, is that, because, under Texas law, a surviving spouse's homestead interests vest at marriage, it is thus not an interest owned by the decedent at death and, therefore, not includible under section 2033. The second, which the Tax Court clearly adopted, is that, regardless of the interest owned by the decedent, all that is included

included in the gross estate ... has no bearing on determining the value at which the interest is to be included." 77 T.C. at 125.[30] The majority analogized to other situations in which the fair market value [31] of property subject to restrictions is recognized to be less than that of the same property without restrictions, *see, e.g., Bolles v. Commissioner,* 69 T.C. 342 (1977) (restrictions under Federal securities laws affect fair market value of stock); *Estate of Bischoff v. Commissioner,* 69 T.C. 32 (1977) (fair market value of minority interest in a business less than proportionate share of value of entire business); *Helvering v. Maytag,* 125 F.2d 55 (8th Cir.1942) (valuation may be reduced to take into account "blockage discount"), and concluded that the restrictions upon homestead property provided for by the Texas Constitution and Texas statutes cannot be disregarded in

determining the fair market value of the homestead property. 77 T.C. at 128.[32]

Judge Fay [33] and Judge Nims [34] both filed dissents to the majority opinion,[35] arguing that the surviving spouse's homestead interest should be included in the calculation of the gross estate; however, they disagreed as to which specific section of the Code requires that result. Judge Fay argued that the surviving spouse's homestead interest should have been included in the decedent's gross estate under the terms of section 2034 of the Code. Under Judge Fay's analysis, the surviving spouse's rights under the Texas homestead laws were an interest in the property not owned by the decedent at the time of her death, and thus, not includible in her estate under section 2033. This "gap" or "loophole" in the application of section 2033, he urges, is intended to be

under section 2033 is the *value* of the interest and that value is affected by the surviving spouse's homestead rights.

However, it is not entirely clear that the Tax Court rejected the first characterization. At one point, the majority opinion states:

> In this case the decedent did not possess a full total interest subject to her unrestricted control. Once the property was characterized as the homestead, decedent could not sell it without joinder of her spouse, ... nor could she dispose of the entire homestead property by will without its being subject to the rights of her surviving spouse. Thus, at all times decedent could convey only an interest subject to the homestead rights of her husband. Once the property became homestead property, it was no longer subject to decedent's free and unrestricted dominion.

77 T.C. at 126–27 (emphasis supplied).

**30.** The majority contrasted Treas.Reg. § 20.-2033–1(b) which merely states that "[p]roperty subject to homestead or other exemptions under local law is included in the gross estate," with Treas.Reg. § 20.2034–1, which states:

> Thus, the *full value* of property is included in the decedent's gross estate, without deduction of such an interest of the surviving husband or wife, and without regard to when such an interest arose.

Treas.Reg. § 20.2034–1 (1958) (emphasis supplied).

**31.** Section 20.2031–1(b) dictates that the value of interests includible in the gross estate under sections 2031 through 2044 is its fair market value at the time of death (or an alternative valuation date under section 2032). Fair market value is defined as the "price at which the

property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." Treas.Reg. § 20.2031–1(b) (1958).

**32.** The majority summarily rejected the Commissioner's argument that section 2034 requires inclusion of the husband's interest. What dissenting Judge Nims (in agreeing with the majority's position that section 2034 does not apply) refers to as "[t]he excellent explication of Texas law on homestead rights in the majority opinion," consists of a brief reference to the Interpretive Commentary following section 50 of the Texas Constitution (section establishing exemption and limitation on conveyance features of homestead law). We are at a loss to understand how this commentary to a section establishing two features of the homestead laws which are irrelevant to the issue here, *see supra* note 20, supports such a conclusion. A careful review of this commentary provides no illumination as to the issue of whether the waivable forced heirship provision of the homestead laws was established in lieu of dower or curtesy. We note, further, that the commentary to section 52, which contains the forced heirship provision, is equally unilluminating.

**33.** Joined by Judges Tannewald and Simpson.

**34.** Joined by Judges Tannewald, Wilber and Chabot.

**35.** Judge Sterrett dissented separately without opinion.

plugged by section 2034. Stressing that a homestead interest serves essentially the same purposes as dower or curtesy (i.e., to make provision for a widow out of the lands of her husband for her support and the nurture of her children), Judge Fay concluded that for purposes of Federal law, homestead laws should be construed as being "in lieu of dower or curtesy."

Judge Nims argued that section 2034 did not apply, but that homestead rights should nevertheless be included in the decedent's gross estate under section 2033 of the Code. Finding that the surviving spouse's homestead rights "share the common characteristic with dower and curtesy of being initially inchoate," he reasoned that the ripening of those inchoate rights at the date of death constituted a transfer to which the estate tax should attach.[36]

## IV.

■ The Commissioner urges two arguments on appeal: (1) that the interest of the husband, being initially inchoate, does not ripen until death and thus is includible under section 2033; and (2) that a surviving spouse's homestead right is "similar in purpose" to dower and "comparable" to curtesy; therefore the elective life estate in the homestead property is one created "in lieu of dower and curtesy." Because we hold, although not on the precise grounds urged by the Commissioner, that the surviving spouse's homestead interest under Texas law is includible in the gross estate under section 2034, we need not examine whether that interest is includible in the gross estate under the generic section.

■ We note at the outset that, contrary to the view expressed by the taxpayer and by Judge Fay in his dissent below,[37] the determination of whether a state statute is "in lieu of dower or curtesy" within the meaning of section 2034 necessitates an inquiry into the legislative intent of state lawmakers.[38] It is well settled, for purposes of the Federal estate tax, that while we must look to state property law to determine the nature of the decedent's interest in property, taxation under federal law is not determined by local characterization. *Helvering v. Stuart,* 317 U.S. 154, 161, 63 S.Ct. 140, 144, 87 L.Ed. 154 (1942). However, this rule has no application in cases in which the federal statute makes its operation dependent upon state law. *Stuart, supra,* at 161, 63 S.Ct. at 144; *United States v. Pelzer,* 312 U.S. 399, 402, 61 S.Ct. 659, 660, 85 L.Ed. 913 (1941). Section 2034 is such a statute. Section 2034 provides for inclusion in the gross estate of interests only if they are dower or curtesy or if they replace interests characterized as such under state law. *Safe Deposit and Trust Co. v. Tait,* 3 F.Supp. 51, 56 (D.Md.1933). *See also* 1 J. Mertens, *Law of Federal Gift and Estate Taxation* § 10.01, at 594 & n. 5 (1955) (section 2034 requires state law determination); Ossi, Estate of Johnson v. Commissioner: *Inclusion of Homestead Rights in the Gross Estate,* 36 Tax Lawyer 177 (1982) (section 2034 directly refers to state law). Thus, the operation of the second clause of section 2034 is dependent upon the intent of state legislators in enacting the relevant statute.

Accordingly, our determination of whether the waivable forced heirship provision of the Texas homestead law was enacted in lieu of dower or curtesy must begin with an examination of the history and origins of that provision. Such examination convinces

---

**36.** This argument ignores the fact that homestead rights under Texas law have been held to be, not inchoate, but vested property interests. *See United States v. Rodgers,* —— U.S. ——, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983); *Woods v. Alvarado State Bank,* 118 Tex. 586, 19 S.W.2d 35 (1929); *Crews v. General Crude Oil Co.,* 287 S.W.2d 243 (Tex.Civ.App.1955).

**37.** Judge Fay argues forcefully in his dissent that Texas law is irrelevant insofar as it relates

to the proper interpretation of section 2034, and that section 2034, being a *Federal* statute, must be construed in light of *Federal* policies. Taxpayer, in his brief to this court, predictably supports this view.

**38.** This is not to say that in the absence of any direct evidence, this intent cannot be inferred from the similarity in purpose and effect of the state statute and dower or curtesy.

us that this question must clearly be answered in the affirmative.

Most would be surprised to learn that Texas, one of the bastions of community property, at one point in its history had a dower statute. In 1839, the Congress of the Republic of Texas passed a statute, "An act entitled an act defining dowers." 1839 Laws of the Republic of Texas, First Session of the Third Congress, 149. That statute provided, inter alia:

> Sec. 1. Be it enacted by the Senate and House of Representatives of the Republic of Texas in Congress assembled, That the widow may in all cases waive the provision made for her in the will of her deceased husband, and claim her dower, which shall be assigned her accordingly; in which case she receive no part of such provision, unless it appears plainly by the will that the testator intended it in addition to her dower.

> \*   \*   \*   \*   .   \*   \*

> Sec. 3. Be it further enacted, That when any person shall die intestate, or shall make his last will and testament, and not therein make any express provision for his wife by giving and devising unto her such part or parcel of his real and personal estate as shall be satisfactory to her, such widow may signify her dissent thereto in the probate court in the county wherein the succession is opened, at any time within six months after the probate of such will; and then and in

that case she shall be entitled to dower in the following manner, to wit: One third part of all the lands, tenements and hereditaments, of which her husband died, seized and possessed, which third part she shall be entitled to for life, *in which said third part shall be comprehended the dwelling house in which her husband shall have been accustomed most generally to dwell next before his death;* together with the offices, out houses, building, house and kitchen furniture and other improvements thereunto belonging or appertaining: Provided, That if it should appear to the court to whom application is made that the whole of said dwelling house, out houses, buildings and other improvements, thereunto appertaining, cannot be applied to the use of the widow without manifest injustice to the children and other heirs, then and in that case, such widow shall be entitled to such part thereof only as the court may deem reasonable and just.

(Emphasis added). During that same session, the Texas Congress passed the first law exempting the homestead from creditors. 1839 Laws of the Republic of Texas, First Session of the Third Congress, 125.[39] Thus, in essence, the first and third features of the Texas homestead law—exemption from creditors and forced heirship rights—found their origin in these two statutes.

Both of these provisions were the victim of temporary eclipse; at the next session of

---

**39.** This act, the first such homestead exemption in America, states:

> Sec. 1. Be it enacted by the Senate and House of Representatives of the Republic of Texas in Congress assembled, That from and after the passage of this act, there shall be reserved to every citizen or head of a family in this Republic, free and independent of the power of a writ of fieri facias, or other execution issuing from any court of competent jurisdiction whatever, fifty acres of land or one town lot, including his or her homestead, and improvements not exceeding five hundred dollars in value, all house hold and kitchen furniture, (provided it does not exceed in value two hundred dollars,) all implements of husbandry, (provided they shall not exceed fifty dollars in value,) all tools, apparatus and books belonging to the trade or

profession of any citizen, five milch cows, one yoke of work oxen or one horse, twenty hogs, and one year's provisions; and that all laws and parts of laws contravening or opposing the provisions of this act, be and the same are hereby repealed: Provided, The passage of this act shall not interfere with contracts between parties heretofore made.

A prologue contained in the act passed by the Texas Congress, but which did not find its way into the printed version, sheds light on the purpose of the act: "Whereas the comforts and happiness of Families and the protection of Females require the exemption of certain articles and particularly household furniture." (A copy of the original act as passed by the Texas Congress is available at the Texas State Archives, Austin, Texas, File Box 12, File No. 1073.)

the Texas Congress, both statutes were re-pealed.[40] The exemption provision was quickly reinstated at the succeeding congressional session in December, 1840. 1840 Laws of the Republic of Texas, Second Session of the Fourth Congress, 173.[41] The dower statute, however, was not reenacted.[42] In the same session in which the Texas Congress had repealed these two statutes, it adopted an act "To adopt the Common Law of England,—to repeal certain Mexican Laws, and to regulate the Marrital [sic] Rights of parties." 1840 Laws of the Republic of Texas, First Session of the Fourth Congress, 3. By the portion of this statute governing marital rights, the Texas Legislature enacted the definition of the community and separate property of a husband and wife. Therefore, it is entirely logical that the dower statute, in whole, was not reenacted. Giving the widow one-third of her husband's property makes little sense when she is receiving one-half of the community property. The protection of the widow and her children against pauperism is achieved by either; to grant both is redundant. However, the repeal of the Texas dower statute and the adoption of a community property system created a gap in the statutory scheme from that which had previously existed, in that the widow was not guaranteed receiving the dwelling house and would not receive it were it the separate property of her husband. This gap was filled in 1843, when the Texas Congress adopted the predecessor to the forced heirship provisions

of the present Texas homestead law. 1843 Laws of the Republic of Texas, Sixth Congress, 14.[43] This statute assured that the widow would receive the dwelling house, whether it were community property or the separate property of her deceased spouse. Thus, this statute, in effect, reinstated that portion of the prior dower statute which had specifically reserved to the widow the dwelling house.

The historical development of the Texas homestead law, taken together with the express language of Texas' short-lived dower statute, convinces us that the forced heirship provision of the Texas homestead law clearly replaced interests characterized as dower under Texas law. Accordingly, we hold that this provision was enacted in lieu of dower for purposes of section 2034 and, therefore, that the surviving spouse's homestead interest must be included in the decedent's gross estate in accordance with that section.

The taxpayer argues that differences which exist between dower and homestead laws preclude such a conclusion. The taxpayer points out several ways in which the homestead estate differs from the right of dower or curtesy:

(1) dower is a creature of the English common law, whereas homestead laws are entirely dependent upon constitutional and statutory provisions;[44]

(2) dower exists only in favor of the surviving spouse, whereas homestead

**40.** The dower statute was repealed by "An Act to repeal certain acts therein named." 1840 Laws of the Republic of Texas, First Session of the Fourth Congress, 172–73. The homestead exemption was superseded by "An Act concerning executions," which removed the absolute exemption of the family home from execution and made it available for satisfaction of debt in the absence of other property in the county. 1840 Laws of the Republic of Texas, First Session of the Fourth Congress, 93–94.

**41.** As explained by one commentator:
What may have prompted second thoughts about the wisdom of the 1839 enactment cannot be discerned from the meager records that have survived.... But the Texas legislators perceived a continuing need for protecting colonists from foreign debts, and ...

just as quickly as the first homestead law was repealed, it was reinstated....
McKnight, supra at n. 11, at 395.

**42.** A bill entitled "An act to regulate Dower and Curtesy," was introduced in the second session of the Fourth Congress, but did not pass. This act, however, did not contain the provision concerning the dwelling house. (A copy of this bill is available at the Texas State Archives, Austin, Texas, File Box 16, File 1458.)

**43.** See supra note 19.

**44.** That homestead is a statutory right is irrelevant; section 2034, by its very language, contemplates that an interest in lieu of dower or curtesy would be created by statute.

laws inure to the benefit of other constituent members of the decedent's family;[45]

(3) dower is assignable, whereas homestead rights are not;

(4) the rights of dower and curtesy apply to all real property which the spouse owned at death or acquired during marriage, while the homestead is limited to the specific property actually occupied and used by the family as homestead; and

(5) dower is an inchoate right, whereas the Texas homestead law has been interpreted as a vested property right.[46]

Initially, we reject these differences as a basis for concluding that the Texas homestead law cannot be held to be in lieu of dower or curtesy, on the basis of the historical development of dower and homestead in Texas outlined above. This historical development takes the determination outside the realm of generalities, and directly establishes the fact that this particular homestead provision replaced an interest specifically characterized as dower under Texas law; thus, general characterizations of dower and homestead laws are fruitless. Moreover, we note that differences in the two interests alone are insufficient justification for concluding that the Texas homestead laws are not in lieu of dower or curtesy. Consistent with this view, section 20.2034–1 of the Treasury Regulations provides that "[a] decedent's gross estate includes under section 2034 any interest in property of the surviving spouse existing at the time of the decedent's death as dower or curtesy, or any interest created by statute in lieu thereof (*although such other interest may differ in character from dower or curtesy*). Thus, the full value of property is included in the decedent's gross estate, without deduction of such an interest of the surviving husband or wife, and without regard to when the right to such an interest arose." Treas.Reg. § 20.2034–1 (1958) (emphasis added). In any event, we believe that any differences which may exist between these two interests are more than outweighed by their similarities: both dower and homestead serve the same basic purpose—to provide for the widow and her children and to prevent their becoming wards of the state; both dower and homestead achieve this result, at least in part, through a form of forced heirship; both protect these forced heirship rights through limitations on lifetime conveyances; both are interpreted in the majority of states as inchoate and in a minority of states as a vested right; and both protect the interest created from the claims of creditors. We are not the first to note the similarity between these two interests; dower and homestead are often compared. *See United States v. Hiles,* 318 F.2d 56 (5th Cir.1963); *Weitzner v. United States,* 309 F.2d 45 (5th Cir.1962); *Seaton v. Seaton,* 184 Va. 180, 34 S.E.2d 236 (1945); *Hughes v. Milligan,* 42 Kan. 396, 22 P. 313 (1889); *Davis v. Andrews,* 30 Vt. 678 (1858). Indeed the specific Texas provision at issue in this case has been likened to dower:

---

**45.** While it is certainly true that dower rights are given only to the widow and that homestead rights may be given to children and their guardian, we note that the *purpose* of dower, like homestead rights, is to provide not only for the widow, but also for her children. That homestead rights more effectively realize this purpose is immaterial.

**46.** This argument by taxpayer is both factually inaccurate and question begging. First, it is not true that dower is universally recognized as an inchoate right. Some states interpret dower, as Texas does homestead, as a vested right. *See Lefteris v. Poole,* 234 Md. 34, 38, 198 A.2d 250, 252 (1964); *Dickson v. Industrial National Bank,* 115 R.I. 458, 460, 348 A.2d 26, 27 (1975); *Allen v. Henggeler,* 32 F.2d 69 (8th Cir.), *cert. denied,* 280 U.S. 594, 50 S.Ct. 40, 74 L.Ed. 642

(1929) (interpreting Nebraska law); *Maryland Casualty Co. v. Lewis,* 276 Ky. 263, 124 S.W.2d 48 (App.1939). Moreover, for purposes of section 2034, such characterizations merely beg the question. While such characterizations may be relevant for purposes of includibility under section 2033, *see Randolph v. Craig,* 267 F. 993 (M.D.Tenn.1920), after passage of section 2034 it was held that dower or interests in lieu thereof were includible in the gross estate even where the decedent died in a state where the wife's interest vested on marriage. *Allen v. Henggeler, supra; Umsted v. United States,* 16 Am.Fed.Tax.Rep. 1007 (W.D.Ark.1935). Therefore, characterization of the homestead interest as inchoate or vested begs the question of whether that interest is in lieu of dower or curtesy.

The Congress of the Republic, however, was not satisfied with a mere exemption of the property specified in the act of 1839, so, by a law passed January 9, 1843, it also exempted this property from sale for debts by the probate court, and set apart the property for "the sole use and benefit of the widow and children of the deceased." ... This was a distinct departure from a mere exemption statute, *and certainly provided for an estate similar in purpose to the common-law estate in dower.*

*Woods v. Alvarado State Bank,* 118 Tex. 586, 19 S.W.2d 35, 36 (1929) (emphasis supplied) (citations omitted).

■ We find additional support for our conclusion that the husband's homestead interest is includible in the decedent's gross estate in the fact that, while the rule established in *Estate of Hinds* has been relied upon as controlling authority on this issue for over 30 years, Congress has never indicated either its disagreement with the result there reached or that it considered the issue unsettled. The Supreme Court, in *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), observed that it is "always appropriate to assume that our elected representatives, like other citizens, know the law." 441 U.S. at 696–97, 99 S.Ct. at 1957–58. In 1948, the Tax Court, in *Estate of Hinds,* required the inclusion of the value of the surviving spouse's homestead interest in the decedent's gross estate. This ruling subjected to the Federal estate tax substantial amounts of marital property [47] which, if not otherwise included, would completely escape taxation.[48] Had Congress not intended this property to be taxed, it had ample opportunity—thirty-four years—to so indicate. Yet Congress, in several substantial revisions of the estate tax laws, *see, e.g.,*

Internal Revenue Code of 1954, Pub.L. No. 83–591, 68A Stat. 3 (1954); Revenue Act of 1962, Pub.L. No. 87–834, 76 Stat. 760 (1962); Economic Recovery Tax Act of 1981, Pub.L. No. 79–34, 95 Stat. 172 (1981), has not attempted to limit the scope of the *Hinds* decision. In the context of such a well-established judicial interpretation and the long-standing routine recognition of the inclusion of the surviving spouse's homestead interest in the gross estate, the fact that Congress has left that inclusion intact further supports our conclusion that the value of the surviving spouse's homestead interest should indeed be included in the gross estate. *Bob Jones University v. United States,* —— U.S. ——, ——, 103 S.Ct. 2017, 2033, 76 L.Ed.2d 157 (1983); *Herman & MacLean v. Huddleston,* —— U.S. ——, ——, 103 S.Ct. 683, 689, 74 L.Ed.2d 548 (1983); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 378–82, 102 S.Ct. 1825, 1839–41, 72 L.Ed.2d 182 (1982); *Haig v. Agee,* 453 U.S. 280, 300, 101 S.Ct. 2766, 2778, 69 L.Ed.2d 640 (1981); *cf. United States v. Correll,* 389 U.S. 299, 305–06, 88 S.Ct. 445, 448–49, 19 L.Ed.2d 537 (1967).

## V.

For at least thirty-four years, the governing rule for estate tax purposes has been that Texas homestead property is includible in a decedent's gross estate without reduction for the value of any rights of the surviving spouse. Yet the Tax Court, in the present case, has seen fit to depart from this long-established rule and remove substantial amounts of property from the scope of the Federal estate taxes. However, in light of the historical development of dower and homestead under Texas law and in light of thirty-four years of Congressional acquiescence, we decline to join in this de-

---

**47.** For example, in this case the amount in question was $81,711.77, or approximately 40% of the value of the homestead property.

**48.** The estate tax reaches only property interests that are owned by the decedent and transferred at his death. I.R.C. § 2001(a). Life estates and other such interests which terminate at death are not reached. *Williams v. United*

*States,* 41 F.2d 895, 897 (Ct.Cl.1930); Rev.Rul. 74–492, 1974–2 C.B. 298. Thus, if the value of the surviving spouse's life estate in the homestead property is not included in the decedent's gross estate, it will not be taxed at all, since the surviving spouse's interest will terminate at his death.

parture. Accordingly, the decision of the Tax Court is REVERSED and REMANDED with instructions to enter judgment for the Commissioner.